The petitioner, Andrea Moore, a defendant in an action pending in the Montgomery Circuit Court, seeks a writ of mandamus ordering the circuit court to vacate its order denying her request for a jury trial in an eviction action brought by the Housing Authority for the City of Montgomery ("MHA"), pursuant to the Sanderson Act, Ala. Code 1975, § 35-9-80 et seq. The purpose of the Sanderson Act is to provide a more speedy remedy to a landlord for recovering possession of his or her land after expiration of a lease or when possession is wrongfully withheld by the tenant. See Garrett v. Reid, 244 Ala. 254, 13 So.2d 97
(1943). See also Riley v. Riley, 257 Ala. 636, 60 So.2d 432
(1952); Williams v. Prather, 236 Ala. 652, 184 So. 473 (1938); and Hicks v. Longfellow Dev. Co., 362 So.2d 219 (Ala. 1978). The Sanderson Act also vests Alabama district courts with jurisdiction to hear cases brought under that act. Section35-9-80 states:
 "In all cases where a tenant shall hold possession of lands or tenements over and beyond the term for which the same were rented or leased to him, or after his right of possession has terminated or been forfeited, and the owner of the lands or tenements shall desire possession of the same, such owner may by himself, his agent or attorney-in-fact or attorney-at-law demand the possession of the property so rented, leased, held or occupied; and if the tenant refuses or omits to deliver possession when so demanded, the owner, his agent or attorney-at-law or attorney-in-fact may go before the district court in the county in which the land lies, and make oath of the facts."
Section 35-9-83 provides:
 "Any defendant in any such action may remove such action from the district court before whom the same is brought, to the circuit court of the county in which the real estate sued for is situated, in like manner and upon like proceedings as actions for forcible entry and detainer or unlawful detainer may now be so removed, and the trial of any such case so removed shall be conducted under like procedure and with like issues as now provided for the trial of actions of forcible entry and detainer or of unlawful detainer so removed."
Further, § 35-9-87, states, in pertinent part:
 "(a) Any party may appeal from a judgment entered against him by any district court, to the circuit court, at any time within one day after the entry thereof, and such appeal and the proceedings thereon shall in all respects be governed by the law relating to appeals from district courts."
Moore, a tenant at 3704(B) Smiley Circle, in Smiley Court,[1] a housing complex in *Page 1133 
Montgomery, was served with a notice of eviction on November 13, 2002, and thereafter failed to deliver possession of the apartment at 3704(B) Smiley Circle. On December 12, 2002, MHA filed an eviction action against Moore under the Sanderson Act in the Montgomery County District Court. The basis of MHA's eviction action was that Moore had held possession of the premises over and beyond the term of her lease. Moore responded by filing an affidavit, contending that her lease had not been terminated and that she had a right to continue as a tenant of the residence. On January 6, 2003, the district court entered an order evicting Moore. The next day, Moore filed a notice of appeal to the Montgomery Circuit Court in which she requested a trial by jury. Thereafter, MHA filed a motion to strike Moore's jury demand, which Moore opposed. After a hearing on the matter, the circuit court entered an order denying Moore's request for a trial by jury and set the case for a nonjury trial. The circuit court's order denying Moore's request for a jury trial states:
 "The above-referenced case having come before this Court on [MHA's] motion to strike [Moore's] jury request, and argument having been heard without the taking of evidence, the Court grants the motion to strike and strikes the jury request. The Alabama Constitution does not confer on a tenant the right to a trial by jury in an eviction pursuant to the Sanderson Act, because such an action differs from unlawful detainer actions in that a money judgment is not available, and in that a Sanderson Act eviction was specifically designed to be more expeditious."
Moore contends that the issue presented to this Court is whether the circuit court violated her constitutional right to a trial by jury guaranteed by § 11 of the Alabama Constitution of 1901. She argues that she is entitled to a jury trial because, she says, an eviction under the Sanderson Act is within the class of actions for which a right to a jury trial existed when the Alabama Constitution was adopted in 1901. Thus, she asserts that she has a clear legal right to a writ of mandamus from this Court ordering the trial court to grant her request for a jury trial.
 "A writ of mandamus is an extraordinary remedy, and it will be `issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.' Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala. 1993). A writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal. Ex parte Drill Parts Serv. Co., 590 So.2d 252 (Ala. 1991). It is well settled that `a writ of mandamus will not issue to review the merits of an order denying a motion for a summary judgment.' Ex parte Central Bank of the South, 675 So.2d 403, 406 (Ala. 1996)."
Ex parte Empire Fire Marine Ins. Co., 720 So.2d 893, 894
(Ala. 1998). "The rights of the parties secured by those statutory provisions [providing for a right to a trial by jury] are subject to the enforcement by mandamus in view of the fact that as a rule *Page 1134 
there would not be an adequate remedy by appeal from the final judgment." Ex parte Merchants Nat'l Bank of Mobile,257 Ala. 663, 664, 60 So.2d 684, 685 (1952), citing Ex parte Ansley,107 Ala. 613, 18 So. 242 (1895); Knight v. Farrell Reynolds,113 Ala. 258, 20 So. 974 (1896); 55 C.J.S. Mandamus, § 93, p. 151. "Mandamus is the appropriate review where the availability of a jury trial is at issue." Ex parte Cupps, 782 So.2d 772, 775
(Ala. 2000).
 "The right to a trial by jury in civil cases is protected in the federal courts by the Constitution of the United States and in our state courts by Section 11 of the Alabama Constitution of 1901, which provides: `That the right to a trial by jury shall remain inviolate.'
 "Unlike the Federal Constitution which preserves the right to jury trial as of 1791, Alabama's Constitution effected a `freezing' of the right to jury trial as of 1901. Section 11 did not extend the right to cases in which it did not exist at that time. Miller v. Gaston, 212 Ala. 519, 103 So. 541
(1925); In re One Chevrolet Automobile, 205 Ala. 337, 87 So. 592 (1921); Alford v. State, ex rel. Attorney General, 170 Ala. 178, 54 So. 213 (1910). See also Thomas v. Bibb, 44 Ala. 721 (1870); Tims v. State, 26 Ala. 165 (1855); and Boring v. Williams, 17 Ala. 510 (1850).
 "The correctness of these general principles cannot be disputed. However, as is often the case, generality leads to oversimplification. In several of our later decisions, it was held that the constitutional right to a trial by jury does not extend to causes unknown to the common law or to the statutory law as it existed at the time of the adoption of the Constitution. See, e.g., Porter v. Alabama Farm Bureau Mutual Cas. Ins. Co., 279 Ala. 499, 187 So.2d 254 (1966); City of Mobile v. Gulf Development Co., 277 Ala. 431, 171 So.2d 247 (1965); Miller v. Gaston, supra.
 "This proposition lends itself to two possible interpretations. One construction is that the constitutional guaranty of trial by jury extends only to common law causes of action existing at the time of adoption of the 1901 Constitution, i.e., that the guaranty does not extend to statutory law existing at that time. The other construction is that the guaranty of trial by jury extends only to causes existing either at common law or under statutory law at the time of the adoption of the 1901 Constitution. The courts of the several states are divided on this question, some having adopted the former interpretation and some, including Alabama, being committed to the latter. In one of our older cases, Tims v. State, supra, the principle is stated:
 "`But it also urged, that the act is in conflict with the twenty-eighth section of the bill of rights, which declares "that the trial by jury shall remain inviolate." In relation to this position, it is only necessary to observe, that it was not intended by this clause of the constitution to extend the right of jury trial to cases which were unknown either to the common or statute law, at the time of the adoption of that instrument.'
 "In Alford v. State, supra, the court quoted from Tims v. State, supra, and set forth the principle as it applies to both civil and criminal cases:
 "`The right [trial by jury] is confined to those classes of cases in which the right existed at common law, or in which it was used at the time of the adoption of the Constitution. Where there have been several Constitutions, the right is in reference to its existence at the time of the adoption of the last one.'" *Page 1135 
Gilbreath v. Wallace, 292 Ala. 267, 269-70, 292 So.2d 651, 653
(1974) (footnote omitted).
In light of the rule discussed in Gilbreath, we must determine whether the right to a trial by jury existed by statute or at common law for a Sanderson Act eviction at the time of the adoption of the Alabama Constitution of 1901. Therefore, we consider whether the action now characterized as a Sanderson Act eviction existed at that time.
Because the courts of this State have yet to address this particular issue, we consider the analogous case of Pernell v.Southall Realty, 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198
(1974). In that case, the United States Supreme Court was called upon to determine whether the Seventh Amendment of the United States Constitution guaranteed the right to a trial by jury in an action brought by a tenant who sought recovery of possession of real property after having been evicted by the landlord.
Dave Pernell had entered into a lease agreement with Southall Realty for the rental of a house in the District of Columbia. Shortly after the execution of the lease agreement, Southall filed a complaint in the Superior Court of the District of Columbia seeking to evict Pernell from the premises for the alleged nonpayment of rent. The action was brought under District of Columbia Code §§ 16-1501 through 16-1505, which set forth a procedure for the recovery of possession of real property by a landlord from a tenant and is analogous to the Sanderson Act. In his answer denying that he owed rent, Pernell also requested a trial by jury, which the trial judge denied. The case was tried as a bench trial and a judgment was entered in favor of Southall. Pernell appealed to the District of Columbia Court of Appeals, claiming, among other things, that the Seventh Amendment guaranteed the right to a trial by jury in all cases brought pursuant to § 16-1501. The Court of Appeals affirmed the decision of the lower court, holding that jury trials are not guaranteed by the Seventh Amendment in landlord-tenant cases predicated on the nonpayment of rent or some other breach of the lease agreement where the only relief sought was repossession of the rented premises. Pernell then petitioned the United States Supreme Court for certiorari review, which it granted.
Addressing the issue whether § 16-1501 of the District of Columbia Code was limited to instances where a landlord sought to evict a tenant, the Court stated:
 "District of Columbia Code § 16-1501 provides a remedy `(w)hen a person detains possession of real property without right, or after his right to possession has ceased. . . .' The statute is not limited to situations where a landlord seeks to evict a tenant, but may be invoked by any `person aggrieved' by a wrongful detention of property. Ibid. See also infra, at 379. Under the statute, when a verified complaint is filed by the person aggrieved by the detention, the Superior Court of the District of Columbia may issue a summons to the defendant to appear and show cause why judgment should not be given against him for the restitution of possession. This summons must be served seven days before the day fixed for the trial of the action. § 16-1502. If, after the trial, it appears that the plaintiff is entitled to possession, judgment and execution for possession shall be awarded in his favor with costs. If, on the other hand, the plaintiff nonsuits or fails to prove his case, the defendant shall have judgment and execution for his costs. See § 16-1503. *Page 1136 
 "The Seventh Amendment provides: `In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. . . .' Like other provisions of the Bill of Rights, it is fully applicable to courts established by Congress in the District of Columbia. See Capital Traction Co. v. Hof, 174 U.S. 1, 5
(1899).
 "This Court has long assumed that actions to recover land, like actions for damages to a person or property, are actions at law triable to a jury. In Whitehead v. Shattuck, 138 U.S. 146, 151 (1891), for example, we recognized that
 "`(i)t would be difficult, and perhaps impossible, to state any general rule which would determine in all cases what should be deemed a suit in equity as distinguished from an action at law . . .; but this may be said, that where an action is simply for the recovery and possession of specific, real, or personal property, or for the recovery of a money judgment, the action is one at law.'
 "See also Scott v. Neely, 140 U.S. 106, 110 (1891); Ross v. Bernhard, 396 U.S. 531, 533 (1970).
 "Respondent suggests, however, that these precedents should be limited to actions to recover property where title is in issue and that actions brought under § 16-1501 should be distinguished as actions for the recovery of possession where claims of title are irrelevant. The distinction between title to and possession of property, of course, was well recognized at common law. See Grant Timber Mfg. Co. v. Gray, 236 U.S. 133, 134 (1915). But however relevant it was for certain purposes, it had no bearing on the right to a jury trial. The various forms of action which the common law developed for the recovery of possession of real property were also actions at law in which trial by jury was afforded.
 "Over the course of its history, the common law developed several possessory actions. Among the earliest of these was the assize of novel disseisin which developed in the latter half of the 12th century and permitted one who had been recently disseised of his tenement to be put back into seisin by judgment of the King's court. Trial by assize represented one of the earliest forms of trial by jury. After the plaintiff lodged his complaint, a writ would issue bidding the sheriff to summon 12 good and lawful men of the neighborhood to `recognize' before the King's justices whether the defendant had unjustly disseised the plaintiff of his tenement. Like the modern cause of action embodied in § 16-1501, novel disseisin was a summary procedure designed to mete out prompt justice in possessory disputes.
 "Writs of entry, dating from about the same period, were developed to encompass situations not covered by the assize of novel disseisin. Novel disseisin, for example, was applicable only where the defendant gained possession wrongfully by putting the plaintiff out of seisin. Writs of entry, in contrast, permitted recovery where the defendant entered into possession lawfully but no longer had rightful possession. Indeed, one of the writs of entry, the writ of entry ad terminum qui praeterit, could be used by a plaintiff to recover lands from a defendant who had originally held them for a term of years, which term had expired. The writ, in other words, embodied a cause of action quite similar to that encompassed in § 16-1501. Significantly for present purposes, it is clear *Page 1137 
that either party could demand a jury trial.
 "Both of these forms of action, though not legally abolished until well into the 19th century, had fallen into disuse by the time our Constitution was drafted. By then, ejectment had become the most important possessory action. Ejectment originated as a very narrow remedy, designed to give the lessee of property a cause of action against anyone who ejected him, including his lessor. But by a variety of intricate fictions, ejectment eventually developed into the primary means of trying either the title to or the right to possession of real property.
 "In particular, ejectment became the principal means employed by landlords to evict tenants for overstaying the terms of their leases, nonpayment of rent, or other breach of lease covenants. Had Southall Realty leased a home in London in 1791 instead of one in the District of Columbia in 1971, it no doubt would have used ejectment to seek to remove its allegedly defaulting tenant. And, as all parties here concede, questions of fact arising in an ejectment action were resolved by a jury.
 "Notwithstanding this history, the Court of Appeals reasoned that an action under § 16-1501 was not the `equivalent' of an action of ejectment. [Pernell v. Southall Realty,] 294 A.2d [490], at 492 [(D.C. 1972)]. It noted that another section of the D.C. Code sets forth a more specific action of ejectment. Moreover, the expedited character of a § 16-1501 proceeding was seen as contrasting sharply with the archaic limitations and cumbersome procedures that marked the common-law action of ejectment. Ibid.
Since, in its opinion, neither § 16-1501 nor its equivalent existed at common law, the Court of Appeals held that the Seventh Amendment did not guarantee the right to jury trial.
 "In our view, this analysis is fundamentally at odds with the test we have formulated for resolving Seventh Amendment questions. We recently had occasion to note that while `the thrust of the Amendment was to preserve the right to jury trial as it existed in 1791, it has long been settled that the right extends beyond the common-law forms of action recognized at that time.' Curtis v. Loether, 415 U.S. 189, 193
(1974). The phrase `suits at common law' includes not only suits
 "`which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined, in contra-distinction to those where equitable rights alone were recognized, and equitable remedies were administered. . . . In a just sense, the amendment then may well be construed to embrace all suits which are not of equity and admiralty jurisdiction, whatever may be the peculiar form which they may assume to settle legal rights.' Parsons v. Bedford, 3 Pet. 433, 447 (1830) (emphasis in original).
 "Whether or not a close equivalent to § 16-1501 existed in England in 1791 is irrelevant for Seventh Amendment purposes, for that Amendment requires trial by jury in actions unheard of at common law, provided that the action involves rights and remedies of the sort traditionally enforced in an action at law, rather than in an action in equity or admiralty. See Curtis v. Loether, supra, at 195.
 "The proceeding established by § 16-1501, while a far cry in detail from the common-law action of ejectment, serves *Page 1138 
the same essential function — to permit the plaintiff to evict one who is wrongfully detaining possession and to regain possession himself. As one commentator has noted, while statutes such as § 16-1501 were `unknown to the common law . . . (t)hey are designed as statutes for relief, not to create new causes of action. The evident intention is to give this summary relief in those cases where . . . the action of ejectment would lie.' Indeed, the courts of the District themselves have frequently characterized the action created in § 16-1501 as a `substitute' for an ejectment action. Moreover, it appears that every action recognized in 1791 for the recovery of possession of property carried with it the right to jury trial. Neither respondent nor the Court of Appeals was able to point to any equitable action even remotely resembling § 16-1501. Since the right to recover possession of real property governed by § 16-1501 was a right ascertained and protected by courts at common law, the Seventh Amendment preserves to either party the right to trial by jury."
416 U.S. at 369-76, 94 S.Ct. 1723 (footnotes omitted).
 "The common law is the base upon which all of the laws of this state have been constructed, and when our courts are called upon to construe a statute — when they are called upon to ascertain and declare the legal effect and meaning of a legislative enactment — they must read the statute in light of the common law."
Cloverdale Homes v. Town of Cloverdale, 182 Ala. 419, 429,62 So. 712, 715 (1913), overruled on other grounds, City of OrangeBeach v. Benjamin, 821 So.2d 193 (Ala. 2001). "Ejectment was known to the common law, Betz v. Mullin, 62 Ala. 365 [(1878)], and it seems implicit that the right to a trial by jury is preserved in causes known to the common law in Section 11 of the Constitution of Alabama 1901." Kelley v. Mashburn, 286 Ala. 7,9, 236 So.2d 326, 327-28 (1970).
The United States Supreme Court's rationale and holding inPernell is persuasive authority in this case. Specifically, the Sanderson Act serves essentially the same function as an ejectment action — it provides a landlord with a means to evict a tenant wrongfully detaining possession — and ejectment was a part of the common law of this State when the Constitution of 1901 was adopted, with the implicit right to a trial by jury. Thus, the implication of the rationale of Pernell, applicable to the instant facts, is that Moore is entitled to a trial by jury on her appeal to the circuit court challenging the district court's judgment rendered in favor of MHA.
MHA contends, relying on a statement concerning the jurisdiction of the probate courts and the circuit courts to consider appeals from Sanderson Act evictions in Salvadore v.Howard, 247 Ala. 533, 25 So.2d 412 (1946), that Sanderson Act evictions are purely statutory proceedings. In Salvadore the landlord Hudson filed an affidavit to procure the eviction of the tenant Salvadore, and a writ of eviction was issued. Salvadore filed an opposing affidavit, but he took none of the other steps required by the applicable statutory procedure, no resulting judgment was entered, no transcript of any proceeding was prepared, and Salvadore's attempted appeal to the circuit court omitted critical steps mandated by the statutory procedure. On appeal, this Court, after noting that the proceedings in question "are purely statutory" and that the appellate jurisdiction of the circuit court could be invoked only "by following the mode [of appeal] prescribed by the statute," held that the circuit court never acquired jurisdiction, *Page 1139 
"there being no appeal nor judgment from which an appeal could be taken to said court." 247 Ala. at 535, 25 So.2d at 413-14. The purely "statutory" proceedings in Salvadore were the appellate proceedings; thus, that reference is not pertinent to the issue at hand. MHA also contends, citing Reed v. Hill, 262 Ala. 662,80 So.2d 728 (1955), that if there is no legal cause of action, then there can be no right to a jury trial. MHA further asserts that the appropriate basis for determining whether a litigant has a right to a trial by jury was stated in Waldrop v. Southern Co.Services, Inc., 24 F.3d 152, 156 (11th Cir. 1994). In that case, the United States Court of Appeals for the Eleventh Circuit stated, in pertinent part:
 "To resolve the issue of the availability of a jury trial under the Seventh Amendment when the statute does not provide the answer on its face, the Supreme Court has established a two-pronged standard. See [Chauffeurs, Teamsters Helpers, Local No. 391 v.] Terry, 494 U.S. [558] at 565, 110 S.Ct. [1339] at 1344 [(1990)]. First, the nature of the statutory action compared to the 18th-century actions brought in the English courts prior to the merger of the courts of law and equity. Second, the remedy sought is examined to determine whether it is legal or equitable in nature. Id. (citing Tull [v. United States], 481 U.S. [412] at 417-18, 107 S.Ct. [1831] at 1835 [(1987)]). The Supreme Court has repeatedly stressed that the second inquiry is the `more important' of the two. Terry, 494 U.S. at 565, 110 S.Ct. at 1344 (citing Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989)). See Wooddell v. International Bhd. of Elec. Workers, Local 71, 502 U.S. 93, 97, 112 S.Ct. 494, 498, 116 L.Ed.2d 419 (1991)."
Thus, MHA implicitly argues that because the instant action is equitable in nature, i.e., the Sanderson Act does not provide for money damages, Moore does not have a right to a jury trial. However, our reading of the Sanderson Act reveals that it does not expressly state whether the remedy afforded by the act is legal or equitable in nature.
Notwithstanding the Sanderson Act's failure to state whether it allows for the recovery of money damages, this Court has stated that an action brought pursuant to the Sanderson Act is an action in the nature of unlawful detainer. See Garrett v. Reid, supra;Riley v. Riley, supra; Glenn v. Nixon, 248 Ala. 569,28 So.2d 718 (1946); Cranford v. Lawrence, 252 Ala. 445, 41 So.2d 405
(1949); Williams v. Prather, supra; and Hicks v. LongfellowDev. Co., supra. Historically, the right to a trial by jury in unlawful-detainer actions has been recognized by the courts of this State. See Riley v. Riley, supra; Johnson v. Christian, 2 Port. 201 (Ala. 1835); Powers v. David, 6 Ala. 9 (1844); andUnderwood v. Greater Gadsden Housing Auth., 789 So.2d 867
(Ala.Civ.App. 2000). Additionally, in Mobley v. Moore,350 So.2d 414, 416 (Ala. 1977), this Court stated:
 "The merger of law and equity under the Alabama Rules of Civil Procedure, and in other merged systems, has supplanted the procedural distinction existing between law and equity with the distinction between jury and non-jury cases. Donaldson and Walls, Merger of Law and Equity in Alabama, 33 Ala. Law 134, 142 (1972). Rule 38 explicitly preserves the right to a trial by jury on any issue previously recognized as a triable issue. Rule 38, [Ala. R. Civ. P.] Under the merged system, it is contemplated that a suit will embrace both jury issues and non-jury issues without affecting the parties' right to a jury trial. Poston v. Gaddis, 335 So.2d 165 *Page 1140 
(Ala.Civ.App. 1976), cert. denied, 335 So.2d 169 (Ala. 1976); see also Committee Comments to Rules 2, 38, and 39, [Ala. R. Civ. P.]"
As stated above, we have concluded that a cause of action under the Sanderson Act serves the same function as did an ejectment action at common law, which was "previously recognized as a triable issue," 350 So.2d at 416. Moreover, Ala. Code 1975, §12-12-30, which sets forth the jurisdiction of district courts in Alabama, expressly provides, subject to certain exceptions not applicable to this case, that district courts do not have jurisdiction in actions seeking equitable relief. Specifically, that statute provides, in relevant part:
 "The original civil jurisdiction of the district court of Alabama shall be uniform throughout the state, concurrent with the circuit court, except as otherwise provided, and shall include all civil actions in which the matter in controversy does not exceed ten thousand dollars ($10,000), exclusive of interest and costs, and civil actions based on unlawful detainer; except, that the district court shall not exercise jurisdiction over any of the following matters:
"(1) Actions seeking equitable relief other than:
 "a. Equitable questions arising in juvenile cases within the jurisdiction of the district court.
 "b. Equitable defenses asserted or compulsory counterclaims filed by any party in any civil action within the jurisdiction of the district court."
However, as shown by § 35-9-80 quoted above, district courts do have jurisdiction in Sanderson Act evictions. "`The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute.'" Ex parte Weaver, 871 So.2d 820, 823 (Ala. 2003), quoting Ex parte State Dep't of Revenue, 683 So.2d 980, 983
(Ala. 1996); Auburn Univ. v. Advertiser Co., 867 So.2d 293
(Ala. 2003); Bean Dredging, L.L.C. v. Alabama Dep't of Revenue,855 So.2d 513 (Ala. 2003). Accordingly, we conclude that Moore had a clear legal right to a jury trial and that the circuit court erred by denying her request for a jury trial on her appeal to that court from the judgment rendered by the district court in favor of MHA. Ex parte Empire Fire Marine Ins. Co., supra. We therefore grant Moore's petition and issue a writ directing the trial court to vacate its order striking Moore's demand for a jury trial.
PETITION GRANTED; WRIT ISSUED.
HOUSTON, SEE, LYONS, JOHNSTONE, WOODALL, and STUART, JJ., concur.
[1] The materials submitted to this Court do not explicitly state whether Smiley Court is governmentally subsidized housing; however, in light of the "Affidavit of Substantial Hardship and Order" filed by Moore, which indicates that she receives financial assistance benefits and also shows her total monthly gross income, we infer that Smiley Court is in fact subsidized housing managed by MHA.