Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/21/2023 09:07 AM CDT

NP Dodge Management Company, appellee,
v. Teresa Holcomb, appellant.

___ N.W.2d ___

Filed July 21, 2023.    No. S-22-272.

1. **Moot Question: Jurisdiction: Appeal and Error.** Because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions.

2. **Judgments: Jurisdiction: Appeal and Error.** When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by lower courts.

3. **Moot Question: Words and Phrases.** A case is moot if the facts underlying the dispute have changed, such that the issues presented are no longer alive.

4. **Moot Question.** The central question in a mootness analysis is whether changes in circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.

5. **Moot Question: Appeal and Error.** The public interest exception to the mootness doctrine requires an appellate court to consider (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for guidance of public officials, and (3) the likelihood of recurrence of the same or a similar problem.

Appeal from the District Court for Douglas County, J. Michael Coffey, Judge, on appeal thereto from the County Court for Douglas County, Darryl R. Lowe, Judge. Appeal dismissed.

Caitlin Cedfeldt, of Legal Aid of Nebraska, and Kasey D. Ogle, of Nebraska Appleseed Center for Law in the Public Interest, for appellant.

Andrew J. McElmeel, of Goosmann Law Firm, P.L.C., and Gene M. Eckel and Tara E. Holterhaus, of Spencer Fane, L.L.P., for appellee.

Lindsay R. Belmont, of Koenig | Dunne, P.C., L.L.O., for amicus curiae National Housing Law Project.

Russell E. Lovell II, for amicus curiae Iowa-Nebraska NAACP, and Rebecca Scout Richters for amicus curiae ACLU Foundation of Nebraska.

Kevin Ruser, Ryan P. Sullivan, Rachel Tomlinson Dick, and Alan Dugger for amicus curiae University of Nebraska College of Law Civil Clinical Law Program.

Douglas J. Peterson, Attorney General, James A. Campbell, and Christian Edmonds for amicus curiae Attorney General.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Per Curiam.

When Teresa Holcomb allegedly breached the terms of her residential lease agreement, her landlord, NP Dodge Management Company (NP Dodge), terminated the lease. Holcomb did not leave the property, and NP Dodge initiated eviction proceedings under Nebraska's Uniform Residential Landlord and Tenant Act (the NURLTA). See Neb. Rev. Stat. § 76-1401 et seq. (Reissue 2018). Holcomb requested a jury trial. The county court denied her request, held a bench trial, found in favor of NP Dodge, and ordered restitution of the premises to NP Dodge. Holcomb appealed to the district court, but before that appeal was decided, the county court issued a writ of restitution, whereby Holcomb was removed from the property. The district court later affirmed in all respects.

Holcomb's principal argument on appeal is that § 76-1446, which mandates a bench trial for a possession action under

the NURLTA, violates article I, § 6, of the Nebraska Constitution, which provides that the "right of trial by jury shall remain inviolate." We find the case is moot and therefore dismiss the appeal.

## BACKGROUND

*Lease Agreement and Termination.*

Holcomb and NP Dodge signed a residential lease agreement in August 2020. The lease was for 1 year and was set to expire on July 31, 2021. An addendum to the agreement granted NP Dodge the right to terminate the lease if Holcomb engaged in illegal activity, acts of violence, or threats of violence. On May 6, Holcomb allegedly threatened two residents in the common area of the leased property, and police officers responded to the scene. The next day, pursuant to the addendum, NP Dodge served Holcomb a written notice of termination that required her to vacate the premises within 5 days. Holcomb did not comply.

*Bench Trial.*

On May 19, 2021, NP Dodge filed a complaint in county court seeking restitution of the premises pursuant to the NURLTA. Holcomb denied the allegations in the complaint and requested a jury trial. On June 9, the county court denied Holcomb's request and conducted a bench trial. After the bench trial, the county court found that Holcomb breached the addendum to the lease agreement and entered judgment in favor of NP Dodge. The county court further ordered NP Dodge not to execute a writ of restitution, the means by which it could have Holcomb removed from the premises, until July 9.

*Posttrial Procedural History.*

On June 22, 2021, Holcomb filed a notice of appeal to the district court. She also filed a motion requesting that the county court stay enforcement of the writ of restitution until the county court set an appeal bond and Holcomb had an opportunity to put up the bond. On July 27, NP Dodge filed a

praecipe for writ of restitution, which the county court granted the next day. A Douglas County constable executed the writ and removed Holcomb from the apartment on July 29.

On August 3, 2021, the county court entered an order setting a supersedeas bond in the amount of $225, and additionally ordering Holcomb to make monthly payments to NP Dodge of $225 while the appeal was pending. The county court's order stated that any writ of restitution was to "be recalled" until after the deadline by which the supersedeas bond was to be paid. The county court judge apparently was unaware that the writ of restitution had already been executed.

In her appeal to the district court, Holcomb preserved three arguments relevant to this appeal. First, Holcomb argued that the county court violated article I, § 6, of the Nebraska Constitution by denying her request for a jury trial. Second, Holcomb asserted that the county court violated § 76-1447 by issuing the writ of restitution prior to setting an appeal bond, the payment of which would have stayed execution of the writ while the appeal was pending. Third, Holcomb argued that the county court violated her constitutional right to due process by issuing the writ of restitution without first serving her notice that the writ would issue.

The district court rejected each of Holcomb's arguments. Holcomb appealed again and petitioned to bypass the Nebraska Court of Appeals. We granted the petition to bypass.

After oral argument in this matter, we directed the parties to submit supplemental briefs addressing whether the case had become moot and, if so, whether we should address any of the issues raised under exceptions to the general rule that moot cases are subject to dismissal.

## ASSIGNMENTS OF ERROR

Holcomb assigns that the district court erred (1) in affirming the county court's denial of her request for a jury trial contrary to article I, § 6, of the Nebraska Constitution; (2) in affirming the county court's issuance of the writ of restitution

prior to setting an appeal bond contrary to § 76-1447; and (3) in affirming the county court's issuance of the writ of restitution without first serving notice to Holcomb, in violation of her constitutional right to due process.

## STANDARD OF REVIEW

[1,2] Because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions. *Weatherly v. Cochran*, 301 Neb. 426, 918 N.W.2d 868 (2018). When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by lower courts. *Id.*

## ANALYSIS

*Mootness.*

[3,4] We first confront whether this case is moot given that the writ of restitution was executed and Holcomb was removed from the apartment. A case is moot if the facts underlying the dispute have changed, such that the "issues presented are no longer alive." See *Nebuda v. Dodge Cty. Sch. Dist. 0062*, 290 Neb. 740, 747, 861 N.W.2d 742, 749 (2015). The central question in a mootness analysis is whether changes in circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief. *Id.* Or, as another state supreme court has described mootness, "[a] moot case exists where a judgment rendered by the court will have no practical legal effect upon an existing controversy because an intervening event renders any grant of effectual relief impossible for the reviewing court." *Sloan v. Friends of Hunley, Inc.*, 369 S.C. 20, 26, 630 S.E.2d 474, 477 (2006).

Holcomb argues in this appeal that she was wrongfully evicted because a court, rather than a jury, found that she breached the lease agreement, in violation of her

constitutional right to a jury trial. She also argues that she should have had the opportunity to remain in her apartment pending an appeal, but that the county court erred by issuing a writ of restitution without giving her the opportunity to stay issuance of the writ.

There is no meaningful relief we could provide to remedy any errors pertaining to Holcomb's attempt to stay in her apartment pending appeal. Holcomb was removed from her apartment prior to the completion of the appellate process. Even if we were to find error in that removal, there is nothing we can do now that would allow her to stay in her apartment pending appeal.

As for Holcomb's claim that she should have received a jury trial, she argues that, if we were to find in her favor on that issue, we could grant meaningful relief by vacating the prior judgment, ordering that the cause be remanded for a jury trial, and awarding her possession of the same or a similar unit during the pendency of that jury trial. We disagree such relief would be meaningful. If we were to vacate the judgment and remand the cause for a jury trial, we know of no reason why NP Dodge would continue to pursue this action. An action brought pursuant to the NURLTA determines only whether the plaintiff is entitled to possession. See § 76-1446. But, now, about 2 years after Holcomb's departure from the apartment, NP Dodge would have no need for a determination that it, rather than Holcomb, is currently entitled to possession.

And even if this cause were remanded for a jury trial, NP Dodge continued to seek a judgment, and Holcomb prevailed, we do not believe the county court could grant relief that would have practical legal effect. Although this point is not made perfectly clear in Holcomb's briefing, we presume that she takes the position that if she were to prevail in a subsequent jury trial, the county court should award her possession of the apartment or a similar unit going forward. But, again, the issue in this action is who is entitled to immediate

possession. Back in the summer of 2021, Holcomb could contend that, if NP Dodge's claim that it was entitled to demand that she vacate her apartment lacked merit, she was entitled to possession of an apartment. But Holcomb's lease expired in July 2021, and she offers no reason why she would be entitled to possession of the apartment now about 2 years later. Because Holcomb has no basis to claim a current right of possession, this issue is moot. See *Marshall v. Housing Auth. of City of San Antonio*, 198 S.W.3d 782 (Tex. 2006) (concluding issue of possession in appeal from forcible entry and detainer judgment was moot because tenant's lease had expired and she presented no basis for claiming right to possession after that date). See, also, *Banks v. Housing Auth. of City of Omaha*, 281 Neb. 67, 795 N.W.2d 632 (2011) (explaining that if landlord had continued to pursue forcible entry and detainer action after tenant moved out, action would have been found to be moot).

[5] That this case is moot does not end the matter, however. While a moot case is normally subject to summary dismissal, Nebraska recognizes a public interest exception to the mootness doctrine. See *Rath v. City of Sutton*, 267 Neb. 265, 673 N.W.2d 869 (2004). The exception requires us to consider (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for guidance of public officials, and (3) the likelihood of recurrence of the same or a similar problem. *Id.* We separately analyze each assignment of error to determine whether to exercise our discretion to review the assignment under the public interest exception. See *id.*

### Public Interest Exception: Constitutional Jury Trial Right.

Both NP Dodge and Holcomb contend that we should address Holcomb's argument that she was entitled to a jury trial under the public interest exception to the mootness doctrine. The parties' agreement, however, cannot constrain whether

this court will exercise its discretion to address an argument under the public interest exception. And, for reasons we will explain, we decline to exercise our discretion to address the issue in this case.

We do not dispute the public questions that are implicated by Holcomb's argument. Neither can we deny that an authoritative adjudication would benefit trial judges when presented with arguments like Holcomb's. And while it is certainly possible that this issue will recur in future cases, future recurrence is not the only thing we consider in evaluating this third factor under the public interest exception. Instead, we have said that even if a problem is likely to recur, it is generally inappropriate for an appellate court to review a moot case that does not evade review as a result of a transitory setting. See, e.g., *Beachy v. Becerra*, 259 Neb. 299, 609 N.W.2d 648 (2000).

It is not clear to us that this issue inherently evades appellate review. Although Holcomb's case is moot, there are means by which a tenant can stay enforcement of a writ of restitution pending appeal. See § 76-1447. Indeed, as discussed above, Holcomb attempted to do so in this case. Furthermore, this is the only case we are aware of in which a tenant has attempted to challenge the bench trial provision of the NURLTA and the case was moot by the time it reached this court. We are leery of concluding that an issue inherently evades review based on a sample size of one.

Our decision on whether to address this issue under the public interest exception in this case is also informed by another proposition of law: that ordinarily this court will not pass upon the constitutionality of legislation absent a need to do so in order to properly dispose of an action. See, e.g., *State ex rel. Wieland v. Beermann*, 246 Neb. 808, 523 N.W.2d 518 (1994). Because this case is subject to dismissal even if we were to reach Holcomb's arguments under the public interest exception, see *Rath, supra*, we need not pass upon the

constitutionality of the NURLTA's bench trial requirement to decide the case.

We acknowledge that this court has in at least one case addressed the constitutionality of statutes under the public interest exception to the mootness doctrine. See *In re Interest of Anaya*, 276 Neb. 825, 758 N.W.2d 10 (2008). And we need not foreclose the possibility that we would find that course of action appropriate in a future case. That said, we believe constitutional avoidance principles counsel in favor of the exercise of caution before passing upon the constitutionality of a statute in a case that is moot. That caution and the fact that it is not clear that this issue inherently evades appellate review lead us to conclude that we should not address the argument that the NURLTA's bench trial provision is unconstitutional in this case.

*Public Interest Exception: Appeal Bond and Notice for Writ of Restitution.*

Holcomb assigns two errors in addition to her constitutional jury trial argument. Holcomb assigns that the county court violated § 76-1447 by issuing the writ of restitution prior to setting the appeal bond and that further, the county court violated her constitutional right to due process by issuing the writ of restitution without first serving her notice that the writ would issue. These assignments of error do not warrant review under the public interest exception to mootness because both are bound up with the peculiar procedural history of this particular case.

Recall that in Holcomb's second assignment of error, she argues that the county court violated § 76-1447 in failing to set an appeal bond before it issued the writ of restitution and Holcomb was removed from the apartment. It strikes us as quite unlikely that the facts of another case would present this legal issue for decision. We presume that it is the usual practice of county court judges, if aware of a request for an appeal bond in an eviction case, to promptly set an appeal bond

and thereby allow the appealing party the opportunity to remain in his or her residence while the appeal is pending. It appears that the appeal bond may not have been set in this case until after the writ of restitution issued because the county court judge was not previously made aware of Holcomb's request to set an appeal bond. Although the record on appeal contains a June 22, 2021, motion to set an appeal bond and stay the writ of restitution, there is no indication that motion was set for a hearing before the county court judge.

In any event, Holcomb had ample time to ensure that an appeal bond was set. When it entered judgment, the county court stated that it would not issue a writ of restitution for 30 days. And even after those 30 days passed, the county court did not actually issue a writ of restitution until almost 3 weeks later. Even if the county court judge was aware of Holcomb's request during that time and simply failed to act, a writ of mandamus may have been available to compel the setting of the appeal bond. See *In re Smitherman*, 533 S.W.3d 907 (Tex. App. 2017). Cf. *State v. Kloke*, 78 Neb. 133, 110 N.W. 687 (1907). Because we doubt that future courts will fail to set an appeal bond when asked or that future litigants will fail to avail themselves of all legal avenues to avoid an impending eviction, we find this issue is unlikely to recur and therefore does not warrant review under the public interest exception to the mootness doctrine. See *Rath v. City of Sutton*, 267 Neb. 265, 673 N.W.2d 869 (2004) (declining to address issue under public interest exception that would require detailed examination into specific factual circumstances of case and, due to its unique facts, was unlikely to recur).

The unique posttrial procedural history also leads us to conclude that we should decline to reach Holcomb's third assigned error, that the county court's issuance of the writ of restitution without serving Holcomb notice violated her right to due process. In the normal case, we expect that a tenant against whom a judgment of eviction has been entered will either (1) appeal and post the requisite appeal bond to stay

enforcement of the writ of restitution pending appeal or (2) choose not to appeal and face imminent removal from the premises. The writ of restitution would not be enforced pending appeal in the first scenario, and a tenant in the second scenario will not be caught off guard when the writ of restitution is enforced, since the relief granted to a landlord in an action for possession under the NURLTA is "recovery of possession of the premises." § 76-1431(4). See, also, § 76-1446 ("[i]f judgment is rendered against the defendant for the restitution of the premises, the court shall . . . issue a writ of restitution, directing the constable or sheriff to restore possession of the premises to the plaintiff on a specified date not more than ten days after issuance of the writ of restitution"). Only in a situation where, as here, a tenant desires to stay enforcement of the writ but fails to do so could there possibly be a question about whether the tenant was given adequate notice that the writ of restitution would issue. For the reasons we have explained, however, we believe it unlikely that this situation will recur. We thus decline to reach this issue under the public interest exception to the mootness doctrine. See *Rath, supra*.

*Collateral Consequences.*

In addition to the public interest exception to the mootness doctrine, Holcomb also argues that we should proceed to the merits of her appeal under a separate exception: the collateral consequences exception. Generally, that exception "permits adjudication of the merits of a criminal case where the petitioner may suffer future state or federal penalties or disabilities as a result of the [criminal] judgment" even though the criminal sentence has already been served. *State v. Patterson*, 237 Neb. 198, 202, 465 N.W.2d 743, 747 (1991), citing *St. Pierre v. United States*, 319 U.S. 41, 63 S. Ct. 910, 87 L. Ed. 1199 (1943). Holcomb suggests that she will face negative collateral consequences if the judgment of eviction is not vacated. She claims that as a result of that judgment, landlords may not accept her as a tenant and she may be

disqualified from certain subsidized housing programs. This court has previously refused to apply the collateral consequences exception to mootness outside the criminal context, however, and we decline to do so here. See *Hron v. Donlan*, 259 Neb. 259, 609 N.W.2d 379 (2000) (refusing to vacate protection order in moot appeal because appellant faced no collateral consequences from criminal conviction).

CONCLUSION

Because this case is moot, we dismiss the appeal.

Appeal dismissed.

Papik, J., concurring.

I agree with the majority opinion that this case is moot and that therefore, the appeal should be dismissed. That said, I believe Holcomb has identified a potential constitutional problem with the provision of Nebraska's Uniform Residential Landlord and Tenant Act (the NURLTA) requiring that actions for possession be tried to the court. I write separately to highlight why I believe the bench trial provision may rest on constitutionally fragile ground.

*Constitutionality of NURLTA's*
*Bench Trial Provision.*

The statute providing for actions for possession under the NURLTA states that such an action "shall be tried by the court without a jury." Neb. Rev. Stat. § 76-1446 (Reissue 2018). When the NURLTA was first enacted in 1974, this provision was not present. It was added by a statutory amendment enacted in 1995. See 1995 Neb. Laws, L.B. 52. Holcomb argues this provision violates article I, § 6, of the Nebraska Constitution.

Article I, § 6, of the Nebraska Constitution provides that the "right of trial by jury shall remain inviolate." We have long understood this provision to "preserve the right to a jury trial as it existed at common law and under statutes in force when the Nebraska Constitution was adopted in 1875."

*Eihusen v. Eihusen*, 272 Neb. 462, 466, 723 N.W.2d 60, 63 (2006). See, also, *Bell v. State*, 104 Neb. 203, 176 N.W. 544 (1920). At common law, legal claims were tried by a jury and equitable claims were tried by a court. *Schmid v. Simmons*, 311 Neb. 48, 970 N.W.2d 735 (2022). Thus, in Nebraska, it is well established that litigants are typically entitled to a jury trial on legal claims, but not equitable claims. *Id.* As a result, when a party contends that it is constitutionally entitled to a jury trial, we usually resolve the issue by determining "whether the action is of an equitable or legal nature." *Eihusen*, 272 Neb. at 467, 723 N.W.2d at 63, citing *State ex rel. Douglas v. Schroeder*, 222 Neb. 473, 384 N.W.2d 626 (1986). To determine whether an action is equitable or legal in nature, we consider its "essential character," as well as the "remedy or relief it seeks." See *State ex rel. Cherry v. Burns*, 258 Neb. 216, 223, 602 N.W.2d 477, 482 (1999).

The essential character of § 76-1446 is an "action for possession" of real property leased to a tenant. See, also, Neb. Rev. Stat. §§ 76-1440 to 76-1447 (Reissue 2018). All other causes of action relating to the tenancy "shall be answered and tried separately" from the sole question of possession that an action tried under § 76-1446 resolves. See § 76-1441. The relief awarded, if the landlord prevails, is "restitution of the premises" to the landlord. See § 76-1446.

Our cases—both ancient and recent—have recognized that an action to recover possession of real property is legal, not equitable, in nature. For example, nearly a century ago, this court held that a landlord was not entitled to an injunction restraining a lessee from interfering with the landlord's right to enter the premises. The court explained that the landlord could not rely on an equitable remedy—an injunction—when he had an adequate remedy at law—an action for possession of the premises. See *Vance v. Sumner*, 119 Neb. 630, 230 N.W. 490 (1930). Other cases decided even earlier in our state's history also describe actions for possession of real property as legal in nature. See, *Mohat v. Hutt*, 75 Neb. 732,

106 N.W. 659 (1906); *Wehmer v. Fokenga*, 57 Neb. 510, 78 N.W. 28 (1899); *Warlier v. Williams*, 53 Neb. 143, 73 N.W. 539 (1897); *Morton v. Green*, 2 Neb. 441, 451 (1872) ("[t]his was an action to recover the possession of lands, commonly styled an action of ejectment, and is purely legal in its character"). Fast forward to the modern era, and this court has continued to treat actions for possession of real property as legal in nature. Just 2 years ago, we observed that "[a]n action for restitution of premises brought under [the NURLTA] is an action at law." *Dreesen Enters. v. Dreesen*, 308 Neb. 433, 439, 954 N.W.2d 874, 879 (2021).

This court's characterization of actions for possession of real property as legal in nature is hardly anomalous. Consistent with this court's holdings in the early years of Nebraska's history, the U.S. Supreme Court has stated that although it is difficult to state "any general rule" that would distinguish suits in equity from actions at law, it could say that "where an action is *simply for the recovery and possession of specific real* or personal *property*, or for the recovery of a money judgment, *the action is one at law*." *Whitehead v. Shattuck*, 138 U.S. 146, 151, 11 S. Ct. 276, 34 L. Ed. 873 (1891) (emphasis supplied). See, also, *Scott v. Neely*, 140 U.S. 106, 110, 11 S. Ct. 712, 35 L. Ed. 358 (1891) ("[a]ll actions which seek to recover specific property, real or personal, . . . are legal actions"). Leading historians of the common law likewise describe the various modes of recovering real property as common-law actions triable by jury. See F.W. Maitland, *Equity, Also, the Forms of Action at Common Law: Two Courses of Lectures* 333 (A.H. Chaytor & W.J. Whittaker eds., 1926); Theodore F.T. Plucknett, *A Concise History of the Common Law* 130 (5th ed. 1956).

Although this court has never had occasion to consider whether the nature of an action for possession under the NURLTA means that a party to such an action is entitled to a jury trial, many other courts have concluded that similar actions by a landlord to evict a tenant and recover possession

of real property are legal in nature and are thus subject to similar constitutional jury trial guarantees. The most notable such example is the U.S. Supreme Court's decision in *Pernell v. Southall Realty*, 416 U.S. 363, 94 S. Ct. 1723, 40 L. Ed. 2d 198 (1974). In that case, the U.S. Supreme Court held that the District of Columbia's summary eviction statute, which did not provide for a jury trial, was inconsistent with the jury trial guarantee set forth in the Seventh Amendment to the U.S. Constitution. In its opinion, the U.S. Supreme Court relied on the practice at common law, as well the cases referenced above, in recognizing that actions to recover real property were historically treated as actions at law triable to a jury. It rejected an argument that juries were available only where title was in issue and explained that common-law actions for possession alone were also treated as legal in nature and triable to a jury. And since the "right to recover possession of real property" was "a right ascertained and protected by courts at common law," the U.S. Supreme Court held the Seventh Amendment preserved the right to a jury trial in actions brought under the District of Columbia's summary eviction statute. *Pernell*, 416 U.S. at 376.

Because the Seventh Amendment's jury trial guarantee does not apply to suits in state courts, see, e.g., *Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999), the U.S. Supreme Court's decision in *Pernell, supra*, is not binding in this or other state courts. Even so, most state courts to consider the issue have followed the analytical path laid out in *Pernell* and have concluded that, under jury trial guarantees similar to ours, statutory actions by a landlord to recover possession of real property from a tenant are legal in nature and are thus triable to a jury. See, *Ex Parte Moore*, 880 So. 2d 1131 (Ala. 2003); *Hill v. Levenson*, 259 Ga. 395, 383 S.E.2d 110 (1989); *N. Sch. Congregate Housing v. Merrithew*, 558 A.2d 1189 (Me. 1989); *Criss v. Salvation Army Residences*, 173 W. Va. 634, 319 S.E.2d 403 (1984); *Baldwin Sod Farms, Inc. v. Corrigan*,

746 So. 2d 1198 (Fla. App. 1999). But see *Vinson v. Hamilton*, 854 P.2d 733 (Alaska 1993) (holding that action for possession brought under forcible entry and detainer statute was equitable in nature and that thus, parties did not have state constitutional right to jury trial).

The longstanding precedent of this court and the weight of authority from other jurisdictions thus appears to support Holcomb's argument that actions for possession under the NURLTA are legal in nature. And because the constitutional right to a jury trial extends to actions that are legal in nature, article I, § 6, would seem to afford litigants the right to a jury trial for actions brought under § 76-1446.

In addition to the legal nature of actions for possession, statutes in effect at the time article I, § 6, was adopted also appear to support the argument that the jury trial guarantee applies to actions for possession under the NURLTA. Statutes in effect at that time are relevant because that constitutional provision states that the "right of trial by jury shall remain inviolate." In light of that language, we have long interpreted article I, § 6, to "preserve the right to a jury trial as it existed at common law *and under statutes in force when the Nebraska Constitution was adopted in 1875*." *Eihusen v. Eihusen*, 272 Neb. 462, 466, 723 N.W.2d 60, 63 (2006) (emphasis supplied).

At least two Nebraska statutes in effect in 1875 provided the right to a jury trial in actions to recover real property. First, in 1875, the Nebraska Code of Civil Procedure provided that "[i]ssues of law must be tried by the court" but that "[*i*]*ssues of fact arising in actions for the recovery of* money, or of *a specific real or personal property*, shall be tried by a jury, unless a jury trial is waived, or a reference be ordered as hereinafter provided." Comp. Stat. ch. 2, § 280 (1881) (emphasis supplied); Rev. Stat. ch. 2, § 280, p. 440 (1866) (same).

In addition to the Nebraska Code of Civil Procedure, Nebraska's forcible entry and detainer statute that existed in

1875 independently guaranteed the right to a jury trial in summary possession actions. See Comp. Stat. ch. 10, § 1028 (1881); Rev. Stat. ch. 10, § 1028, p. 576 (1866). As NP Dodge admitted in this case, "the procedures set forth in [the NURLTA] are essentially the same as the procedures found" under the forcible entry and detainer statutes that exist today. Brief for appellee at 21. The forcible entry and detainer statutes have remained essentially unamended since 1875. Compare Rev. Stat. ch. 10, §§ 1019 through 1032, pp. 574-77 (1866), with Neb. Rev. Stat. §§ 25-21,219 through 25-21,235 (Reissue 2016).

Like the possession action under the NURLTA, the sole purpose of a forcible entry and detainer action in 1875 was "to determine the immediate right of possession." *Federal Nat. Mortgage Assn. v. Marcuzzo*, 289 Neb. 301, 310, 854 N.W.2d 774, 781 (2014). See Neb. Rev. Stat. § 76-1441(1) (Reissue 2018). By its terms, forcible entry and detainer applied "in all cases against tenants holding over their terms," and the statutory remedy was "restitution of the premises" enforced by issuance of a "writ of restitution." Rev. Stat. ch. 10, §§ 1020, 1027, and 1031, pp. 574-76 (1866). Likewise, under the NURLTA, a landlord who succeeds at trial is entitled to "restitution of the premises" enforced by issuance of a "writ of restitution." § 76-1446. Nebraska's forcible entry and detainer statute that existed in 1875 thus appears to be "substantially similar" to the possession action authorized by the NURLTA. *Eihusen*, 272 Neb. at 467, 723 N.W.2d at 64.

A landlord-tenant eviction proceeding in 1875 would have been triable to a jury under both the Nebraska Code of Civil Procedure and the forcible entry and detainer statutes then in effect in Nebraska. The fact that these statutes codified the same right to a jury trial that existed for real property possession actions at common law is unsurprising. In 1866, the Territorial Legislature of Nebraska "adopted[] and declared" the "common law of England" to be the law in Nebraska to the extent not inconsistent with the U.S. Constitution, "the organic law of this territory," or with statutes passed by

the Legislature. Rev. Stat. ch. 7, § 1, p. 81 (1866), now codi-
fied at Neb. Rev. Stat. § 49-101 (Reissue 2021). The jury trial
provisions in the Nebraska Code of Civil Procedure and forc-
ible entry and detainer statutes that existed in 1875 thus could
be understood as the Legislature's attempt to faithfully imple-
ment the common-law right to a jury trial in possession actions
as the law in Nebraska.

Despite all of the foregoing, NP Dodge and the Attorney
General, who filed a brief defending the constitutionality of
the NURLTA's bench trial provision, argued in this case that
article I, § 6, of the Nebraska Constitution does not require
that actions for possession under the NURLTA be triable to a
jury. Their primary argument in support of this position was
that such actions are special or summary proceedings. They
contended that under *State v. Moores*, 56 Neb. 1, 76 N.W. 530
(1898), the constitutional right to a jury trial does not extend to
special or summary proceedings.

To be sure, there is language in *Moores* in which this court
quoted an opinion of the Arkansas Supreme Court stating that
"'[t]he right of trial by jury, at common law, never existed in
. . . summary proceedings.'" 56 Neb. at 8, 76 N.W. at 532,
quoting *State v. Johnson*, 26 Ark. 281 (1870). And although
*Moores* does not expressly mention special proceedings, NP
Dodge and the Attorney General argued that some legal ency-
clopedias and other jurisdictions have stated that a constitu-
tional right to a jury trial also does not extend to such proceed-
ings. See, e.g., 47 Am. Jur. 2d *Jury* § 39 (2017); 50A C.J.S.
*Juries* § 37 (2019).

NP Dodge and the Attorney General took the position
that an action for possession under § 76-1446 qualifies as
both a summary and special proceeding under these authori-
ties. Although the exact definitions they offered for these
categories were not completely clear to me, they seemed to
argue that an action for possession under the NURLTA is
a special proceeding because it is codified in chapter 76 of
the Nebraska Revised Statues, rather than chapter 25, and

because it is governed by its own, distinct rules of procedure, as opposed to the ordinary rules of civil procedure. NP Dodge and the Attorney General suggested that an action for possession under the NURLTA is a summary proceeding because the NURLTA prescribes an expedited timeline for certain requirements in such an action. See, e.g., § 76-1442 (requiring service of summons within 3 days); § 76-1446 (requiring that trial be held "not less than ten nor more than fourteen days after the issuance of the summons").

This argument, however, has some flaws. As an initial matter, the statement NP Dodge and the Attorney General rely on from *Moores, supra*, is dicta—the issue in *Moores* was whether the jury trial guarantee applied to a quo warranto proceeding. Furthermore, other dicta in *Moores* is contrary to the argument of NP Dodge and the Attorney General. *Moores* quoted other language from the same Arkansas Supreme Court opinion that stated, "'[s]o far as our research has extended, the right of trial by jury, at common law, only extended to criminal prosecutions and in actions where a freehold or goods and chattels were in dispute. The term "goods and chattels" includes personal property, choses in action, and chattels real.'" 56 Neb. at 9, 76 N.W. at 533, quoting *State v. Johnson, supra*. And "chattels real" meant "interests in land which devolve after the matter of personal estate, as leaseholds," Black's Law Dictionary 194 (2d ed. 1910), or, more simply, "a leasehold estate," Black's Law Dictionary 286 (10th ed. 2014).

In any event, it is difficult for me to conclude that the language in *Moores* at issue would allow the Legislature to remove an action from constitutional jury trial protections by, for example, codifying an action somewhere other than chapter 25 or requiring that the action be completed in an expedited manner. Our court has never before understood *Moores* to allow as much. And if we were to adopt this argument, I do not know what would prevent the Legislature from enacting a statute codified somewhere other than chapter 25 or with some expedited procedures that makes actions that would

otherwise be obviously subject to the constitutional jury trial guarantee—say, a breach of contract action for damages—"special or summary proceedings" tried by a court instead of a jury. It is difficult to understand how this is consistent with article I, § 6's promise that the "right of trial by jury shall remain inviolate."

As opposed to the reading urged by NP Dodge and the Attorney General, it strikes me as more likely that the language in *Moores* regarding summary proceedings and the language in legal encyclopedias and cases from other jurisdictions regarding special proceedings recognizes a much less remarkable proposition: that there are certain proceedings, sometimes described as special, summary, or statutory, *that did not exist at common law* and that the constitutional jury trial guarantee does not apply to such proceedings. Indeed, many of the authorities relied upon by NP Dodge and the Attorney General actually state that it is special or summary proceedings *unknown at common law* to which a jury trial guarantee does not apply. See, e.g., *Hair Excitement v. L'Oreal U.S.A.*, 158 N.H. 363, 368, 965 A.2d 1032, 1037 (2009) (stating that the right to a jury trial "does not extend . . . to special, statutory, or summary proceedings unknown to the common law") (internal quotation marks omitted); *State v. Bennion*, 112 Idaho 32, 74-75, 730 P.2d 952, 994-95 (1986) ("it has been held that the right to jury trial does not apply to actions unknown to the common law . . . and that it does not apply to special proceedings created by statute and not in the nature of common law actions"); 47 Am. Jur. 2d *Jury* § 39 at 452-53 (2017) ("[t]he constitutional right to a jury trial does not apply to special or summary proceedings unknown to the common law[] and . . . provided by statute after the adoption of the constitution"); 50A C.J.S. *Juries* § 37 at 196 (2019) ("there is generally no right to a jury trial in special proceedings unknown at common law, or in summary proceedings").

Our court, too, has recognized that certain statutory proceedings created after 1875 are neither legal nor equitable

because they did not exist at common law and that the constitutional jury trial guarantee does not apply to such proceedings. See, *Schroeder v. Oeltjen*, 184 Neb. 8, 165 N.W.2d 81 (1969) (school district reorganization proceeding); *McMaster v. Wilkinson*, 145 Neb. 39, 15 N.W.2d 348 (1944) (election contest), *overruled in part on other grounds, State ex rel. Brogan v. Boehner*, 174 Neb. 689, 119 N.W.2d 147 (1963). But to the extent it is argued that an action for a writ of restitution under the NURLTA was unknown to the common law, that seems dubious. As explained at length above, actions for possession of real property have consistently been treated as legal in nature, and furthermore, statutes in effect at the time the Nebraska Constitution was adopted also made actions for possession of real property triable to a jury.

It is true that the NURLTA contains myriad other provisions besides the few sections creating and effectuating the summary possession action. See Neb. Rev. Stat. §§ 76-1401 to 76-1449 (Reissue 2018). And I acknowledge that some sections of the NURLTA place statutory obligations on both landlords and tenants—obligations that did not exist at common law or by statute in 1875. But in analyzing whether the Nebraska Constitution protects the right to a jury trial in a particular proceeding, our court considers not the statutory enactment as a whole, but, rather, the "essential character" of the specific "cause of action" upon which the plaintiff brings suit, as well as the "remedy or relief" the plaintiff seeks. See *State ex rel. Cherry v. Burns*, 258 Neb. 216, 223, 602 N.W.2d 477, 482 (1999). Immediate possession of the premises is the only issue before the court in a possession action under the NURLTA.

An action for possession is not a case where a landlord seeks to "obtain injunctive relief to compel" a tenant to give it lawful access to the premises, § 76-1438(1), nor is it a case where a tenant sues a landlord to "obtain injunctive relief for any noncompliance by the landlord with the rental agreement," § 76-1425(2). Instead, the remedy awarded in a

successful action for possession is simply "recovery of possession of the premises." §§ 76-1431(4) and 76-1440. And as discussed extensively above, at common law, causes of action seeking possession of real property were legal in nature and were tried by a jury.

*Public Interest Exception.*

Although the NURLTA's bench trial provision may be of questionable constitutionality, I agree we cannot give practical legal relief to Holcomb in this case and therefore the issue is moot. And while we can decide otherwise moot issues under the public interest exception to the mootness doctrine, the court declines to reach the question of whether the NURLTA's bench trial provision is unconstitutional under that exception in this case.

As I understand the majority opinion, we have declined to exercise our discretion to decide the constitutionality of the bench trial provision in this case because this issue may not inherently evade review. I join the majority opinion with that understanding, but also observe that the relatively short length of most residential leases combined with the time it takes for an appeal to reach this court may make it difficult for this issue to reach this court in a live fashion. If future cases demonstrate that this issue does, in fact, inherently evade review, I would be open to addressing this issue under the public interest exception.

*Conclusion.*

In closing, I note some practical realities after today's decision. While the court has not held that the NURLTA's bench trial provision is unconstitutional, neither have we held that it is constitutional. Furthermore, three members of this court, through this concurrence, have expressed doubts about the constitutionality of the bench trial provision. Suffice it to say, the constitutionality of the NURLTA's bench trial provision remains an open question.

This state of affairs may be of interest to the Legislature. The Legislature may wish to itself consider the constitutionality of, and reassess, the NURLTA's bench trial provision. And even if the bench trial provision remains unchanged, the Legislature may wish to consider addressing whether the rest of the NURLTA is severable from its bench trial provision and, if so, how actions for possession under the NURLTA are to proceed if the bench trial provision is found unconstitutional.

Miller-Lerman and Funke, JJ., join in this concurrence.