Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/13/2017 08:12 AM CDT

Applied Underwriters, Inc., a Nebraska corporation,
and Applied Risk Services, Inc., appellants, v.
S.E.B. Services of New York, Inc., a New York
corporation, and 20th Century Services
of New York, Inc., a New York
corporation, appellees.

___ N.W.2d ___

Filed July 21, 2017.    No. S-16-496.

1. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.
2. **Moot Question: Jurisdiction: Appeal and Error.** Mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, and an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions.
3. **Standing: Jurisdiction: Parties.** Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court.
4. **Jurisdiction: Judgments.** A jurisdictional issue that does not involve a factual dispute presents a question of law.
5. **Moot Question: Words and Phrases.** A moot case is one which seeks to determine a question that no longer rests upon existing facts or rights—i.e., a case in which the issues presented are no longer alive.
6. **Moot Question.** Mootness refers to events occurring after the filing of a suit which eradicate the requisite personal interest in the resolution of the dispute that existed at the beginning of the litigation.
7. **Moot Question: Jurisdiction: Appeal and Error.** Although mootness does not prevent appellate jurisdiction, it is a justiciability doctrine that can prevent courts from exercising jurisdiction.
8. **Moot Question.** As a general rule, a moot case is subject to summary dismissal.

- 247 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
APPLIED UNDERWRITERS v. S.E.B. SERVS. OF NEW YORK
Cite as 297 Neb. 246

9. ____. The central question in a mootness analysis is whether changes in circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.

10. **Parties: Standing.** The question of standing can be raised by any party, or the court, at any time during the proceeding.

11. **Standing: Jurisdiction: Parties.** Standing refers to whether a party had, at the commencement of the litigation, a personal stake in the outcome of the litigation that would warrant a court's or tribunal's exercising its jurisdiction and remedial powers on the party's behalf.

12. **Standing: Words and Phrases.** Standing involves a real interest in the cause of action, meaning some legal or equitable right, title, or interest in the subject matter of the controversy.

13. **Standing: Claims: Parties.** To have standing, a litigant must assert the litigant's own rights and interests, and cannot rest a claim on the legal rights or interests of third parties.

14. **Standing: Jurisdiction: Proof.** A party invoking a court's or tribunals' jurisdiction bears the burden of establishing the elements of standing.

15. **Pleadings: Standing.** At the pleading stage, the standard for determining the sufficiency of a complaint to allege standing is fairly liberal.

16. **Actions: Breach of Contract.** As a general rule, one who is neither a party to a contract nor an agent of a party to a contract has no rights under the contract, and cannot bring an action for breach thereof.

17. **Standing: Jurisdiction.** The defect of standing is a defect of subject matter jurisdiction. And when questions relating to both subject matter jurisdiction and personal jurisdiction are present in a case, the court must first determine the question of subject matter jurisdiction.

Appeal from the District Court for Douglas County: Kimberly Miller Pankonin, Judge. Affirmed.

Jeffrey A. Silver for appellants.

Stephen M. Bruckner and Patrick S. Cooper, of Fraser Stryker, P.C., L.L.O., for appellees.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Stacy, J.
Applied Underwriters, Inc. (Applied), and Applied Risk Services, Inc. (ARS), appeal from an order dismissing their breach of contract action against S.E.B. Services of New York,

Inc., and 20th Century Services of New York, Inc. (collectively S.E.B.). The district court dismissed the action for lack of personal jurisdiction over S.E.B. and alternatively found that Nebraska was an inconvenient forum. We affirm the dismissal, but on different grounds.

## FACTS

Applied is a Nebraska corporation located in Omaha, Nebraska. It markets and administers workers' compensation insurance programs nationwide. S.E.B. is a New York corporation with its principal place of business in New York. S.E.B. provides security services and security guards in at least 22 states.

In 2014, S.E.B.'s third-party insurance broker contacted Applied to discuss obtaining workers' compensation coverage for S.E.B. Subsequently, S.E.B. entered into a "Reinsurance Participation Agreement" (RPA) with Applied Underwriters Captive Risk Assurance Company, Inc. (AUCRAC). AUCRAC is not a party to this litigation. A "true and accurate copy" of the RPA was attached to the complaint in this matter. Paragraph 8 of the RPA recites that ARS is the "billing agent" for AUCRAC and is authorized "to account for, offset and true up any and all amounts due . . . and owing" under the RPA.

The RPA provides workers' compensation coverage through what it describes as a "segregated protected cell reinsurance program" established by AUCRAC. The details of the program are complex but irrelevant for purposes of resolving this appeal. In general, according to the RPA, AUCRAC is part of a "Reinsurance Treaty" composed of several "Issuing Insurers" that participate in a pooling arrangement and collectively issue the workers' compensation coverage afforded under the RPA.

From November 2014 through August 2015, S.E.B. reported payroll information to Applied in Omaha, and Applied used the information to calculate S.E.B.'s premium payments under the RPA. Initially, Applied withdrew amounts for premium

payments directly from S.E.B.'s bank account in New York via electronic debits, but at some point, S.E.B. became dissatisfied with that arrangement and terminated the automatic debits.

S.E.B. fell behind on the required premium payments, and on May 5, 2015, the president of S.E.B. executed a promissory note in favor of "Applied . . . and its affiliates and subsidiaries" in the amount of $42,362.59, payable in monthly installments. The record shows the promissory note was paid in full on December 22, 2015.

On October 26, 2015, Applied and ARS filed suit against S.E.B. in the district court for Douglas County. In count I of the complaint, Applied alleged S.E.B. breached the promissory note and sought recovery of $8,144.27. In count II, ARS alleged S.E.B. breached the RPA between AUCRAC and S.E.B., and it sought recovery of $752,926.98.

On November 30, 2015, S.E.B. filed a motion to dismiss the complaint pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(2) (lack of personal jurisdiction), (b)(6) (failure to state claim upon which relief could be granted), and (b)(7) (failure to join necessary party). S.E.B.'s motion also alleged dismissal was appropriate under Neb. Rev. Stat. § 25-538 (Reissue 2016), which provides: "When the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions that may be just."

A hearing on the motion to dismiss was held January 8, 2016. The district court received three affidavits for the limited purpose of ruling on the motion to dismiss for lack of personal jurisdiction. In addition, the court took judicial notice of the case file.

In an order entered May 9, 2016, the district court dismissed the action for lack of personal jurisdiction and, alternatively, on the ground that Nebraska was an inconvenient forum. Applied and ARS timely appealed, and we moved the case to our docket on our own motion pursuant to our statutory

authority to regulate the caseloads of the appellate courts of this state.[1]

## ASSIGNMENTS OF ERROR

Applied and ARS assign, restated and summarized, that the district court erred in (1) finding it lacked personal jurisdiction over S.E.B. under Nebraska's long-arm statute, (2) declaring the forum selection provisions of the RPA unenforceable, and (3) finding Nebraska was not a reasonably convenient place for trial.

## SUPPLEMENTAL BRIEFING

After hearing oral arguments in this case, we directed the parties to submit supplemental briefing on two issues: (1) whether the promissory note had been paid in full, rendering the appeal on count I moot, and (2) whether Applied and/or ARS had standing to bring the claim alleged in count II when neither was a party to the RPA.

[1] Having reviewed the parties' supplemental briefing, we find the issues of mootness and standing are dispositive. As such, we do not address the original assignments of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[2]

## STANDARD OF REVIEW

[2] Mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, and an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions.[3]

[3] Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court.[4]

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

[2] *State v. Senn*, 295 Neb. 315, 888 N.W.2d 716 (2016); *State v. Planck*, 289 Neb. 510, 856 N.W.2d 112 (2014).

[3] See *Al-Ameen v. Frakes*, 293 Neb. 248, 876 N.W.2d 635 (2016).

[4] *In re Application A-18503*, 286 Neb. 611, 838 N.W.2d 242 (2013).

[4] A jurisdictional issue that does not involve a factual dispute presents a question of law.[5]

## ANALYSIS

### Claim on Promissory Note Is Moot

In count I of its complaint, Applied alleges S.E.B. failed to pay amounts due under the promissory note and $8,144.27 remains due and owing. The record from the hearing on S.E.B.'s motion to dismiss indicates the promissory note was paid in full in December 2015, after the lawsuit was filed. The parties acknowledged this fact at oral argument and confirmed it in supplemental briefing to this court.

[5-8] A moot case is one which seeks to determine a question that no longer rests upon existing facts or rights—i.e., a case in which the issues presented are no longer alive.[6] Mootness refers to events occurring after the filing of a suit which eradicate the requisite personal interest in the resolution of the dispute that existed at the beginning of the litigation.[7] Although mootness does not prevent appellate jurisdiction, it is a justiciability doctrine that can prevent courts from exercising jurisdiction.[8] As a general rule, a moot case is subject to summary dismissal.[9]

[9] Applied argues that count I should not be considered moot because, when the complaint was filed, S.E.B. owed sums on the promissory note. But the central question in a mootness analysis is whether changes in circumstances that prevailed at the beginning of litigation have forestalled any

---

[5] *Id.*

[6] *Blakely v. Lancaster County*, 284 Neb. 659, 825 N.W.2d 149 (2012).

[7] *Id.*; *Professional Firefighters Assn. v. City of Omaha*, 282 Neb. 200, 803 N.W.2d 17 (2011).

[8] *Blakely v. Lancaster County, supra* note 6.

[9] *Greater Omaha Realty Co. v. City of Omaha*, 258 Neb. 714, 605 N.W.2d 472 (2000).

- 252 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
APPLIED UNDERWRITERS v. S.E.B. SERVS. OF NEW YORK
Cite as 297 Neb. 246

occasion for meaningful relief.[10] Here, the record and the judicial admissions of the parties demonstrate such changes in circumstances have occurred since the action was filed. By the time of the hearing on the motion to dismiss, the promissory note had been paid and there was no money remaining due. These changes effectively forestalled any occasion for meaningful relief on count I, rendering the claim moot.

Although the district court's dismissal was premised on lack of personal jurisdiction, we conclude count I is moot and we affirm the dismissal on that basis.

## No Standing to Bring Claim
### for Breach of RPA

[10] The named plaintiffs in this action are Applied and ARS; neither entity is a party to the RPA which S.E.B. is alleged to have breached. We ordered supplemental briefing on the issue of whether Applied and ARS have standing to assert a claim that S.E.B. breached the RPA. The question of standing can be raised by any party, or the court, at any time during the proceeding.[11]

[11-15] Standing refers to whether a party had, at the commencement of the litigation, a personal stake in the outcome of the litigation that would warrant a court's or tribunal's exercising its jurisdiction and remedial powers on the party's behalf.[12] Standing involves a real interest in the cause of action, meaning some legal or equitable right, title, or interest in the subject matter of the controversy.[13] To have standing, a litigant must assert the litigant's own rights and interests,

---

[10] *Blakely v. Lancaster County, supra* note 6; *In re 2007 Appropriations of Niobrara River Waters*, 278 Neb. 137, 768 N.W.2d 420 (2009).

[11] See *Brook Valley Ltd. Part. v. Mutual of Omaha Bank*, 281 Neb. 455, 797 N.W.2d 748 (2011).

[12] *Field Club v. Zoning Bd. of Appeals of Omaha*, 283 Neb. 847, 814 N.W.2d 102 (2012).

[13] *In re Interest of Enyce J. & Eternity M.*, 291 Neb. 965, 870 N.W.2d 413 (2015).

- 253 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
APPLIED UNDERWRITERS v. S.E.B. SERVS. OF NEW YORK
Cite as 297 Neb. 246

and cannot rest a claim on the legal rights or interests of third parties.[14] A party invoking a court's or tribunal's jurisdiction bears the burden of establishing the elements of standing.[15] At the pleading stage, the standard for determining the sufficiency of a complaint to allege standing is fairly liberal.[16]

[16] As a general rule, one who is neither a party to a contract nor an agent of a party to a contract has no rights under the contract, and cannot bring an action for breach thereof.[17] Here, Applied admits that as a nonparty to the RPA, it lacks standing to bring the claim in count II based on breach of the RPA. ARS, however, argues it has standing to bring the claim for breach of the RPA even though it is not a party thereto, because it is acting as AUCRAC's billing agent.

The complaint alleged the RPA appointed ARS the billing agent for AUCRAC and authorized ARS "to account for, offset and true up any and all amounts due . . . and owing" under the RPA. ARS argues this language in the RPA identifying ARS as "the billing agent" for AUCRAC creates an agency relationship that allows ARS to sue S.E.B. for breach of the RPA. ARS analogizes this case to *Deutsche Bank Nat. Trust Co. v. Siegel*.[18]

In *Deutsche Bank Nat. Trust Co.*, a loan servicer filed a complaint on behalf of the holder of a deed of trust, seeking judicial foreclosure of real property. The property owners claimed the court lacked subject matter jurisdiction because the loan servicer was not the real party in interest. We held that the loan servicer had standing as the trust holder's agent for two reasons. First, a contract between the trust holder and the loan servicer authorized the loan servicer "'to institute

---

[14] *In re Interest of Meridian H.*, 281 Neb. 465, 798 N.W.2d 96 (2011).

[15] *Field Club v. Zoning Bd. of Appeals of Omaha, supra* note 12.

[16] *Id.*

[17] See *Marten v. Staab*, 249 Neb. 299, 543 N.W.2d 436 (1996).

[18] *Deutsche Bank Nat. Trust Co. v. Siegel*, 279 Neb. 174, 777 N.W.2d 259 (2010).

foreclosure proceedings . . . on behalf of the Trustee.'"[19] Second, the contract expressly granted a power of attorney to the loan servicer. We found that the power of attorney authorized the loan servicer to act as the trust holder's agent and that the loan servicer acted within the scope of its agency in bringing the foreclosure action. As such, the loan servicer had authority and, implicitly, standing to bring the action on behalf of the trust holder.

The instant case is factually distinguishable from *Deutsche Bank Nat. Trust Co.* Here, ARS is not seeking to enforce the RPA on behalf of AUCRAC pursuant to a power of attorney or any express authorization to institute legal action. Rather, it purports to enforce the RPA as the appointed billing agent for AUCRAC.

The signed RPA was attached to the complaint. We see nothing in the RPA, and ARS directs us to nothing other than its status as the billing agent, which indicates AUCRAC has authorized ARS to bring a legal action for breach of the RPA. To the contrary, the RPA expressly provides that in the event S.E.B. is in default of any obligations under the RPA, "[AUCRAC] may take all reasonable steps to protect its and its affiliates' interests." Referring expressly to bringing legal actions for breach, the RPA provides:

> [I]t is understood and agreed that in the event of any such breach or threatened breach of this Agreement, [AUCRAC] may apply to any federal or state court located in Omaha, Douglas County, Nebraska for, and shall be entitled to, injunctive relief from such court, without the requirement of posting a bond or proof of damages, designed to cure existing breaches and to prevent a future occurrence or threatened future occurrence of like breaches on the part of [S.E.B.]

Furthermore, the RPA expressly disavows any suggestion that any entity other than AUCRAC or S.E.B. has the implied authority to bring an action to enforce the RPA:

---

[19] *Id.* at 178, 777 N.W.2d at 263.

> This Agreement is for the sole benefit of the Parties [defined elsewhere in the agreement as AUCRAC and S.E.B.] and nothing in this Agreement, express or implied, is intended to confer upon any Party, other than the Parties hereto and their affiliates, successors and permitted assigns, any legal or equitable rights, remedies, obligations or liabilities under or by reason of this Agreement, except as expressly provided herein.

Under the facts of this case, even interpreting the pleadings liberally, ARS has neither alleged nor shown an agency relationship between AUCRAC and itself sufficient to give ARS standing to bring an action for breach of the RPA.

[17] The defect of standing is a defect of subject matter jurisdiction.[20] And when questions relating to both subject matter jurisdiction and personal jurisdiction are present in a case, the court must first determine the question of subject matter jurisdiction.[21]

The district court dismissed the action for lack of personal jurisdiction, but we conclude that neither Applied nor ARS has standing to bring the claim alleged in count II, and we therefore affirm the dismissal on that basis.

## CONCLUSION

For the foregoing reasons, the dismissal of this action is affirmed, but on grounds different from those articulated by the district court.

AFFIRMED.

---

[20] *Citizens Opposing Indus. Livestock v. Jefferson Cty.*, 274 Neb. 386, 740 N.W.2d 362 (2007).

[21] See *Sherman T. v. Karyn N.*, 286 Neb. 468, 837 N.W.2d 746 (2013).