IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

COTTONWOOD FLATS V. HOHENSTEIN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

COTTONWOOD FLATS, INC., A NEBRASKA CORPORATION, APPELLEE,

V.

KURT A. HOHENSTEIN, APPELLANT, AND KASEY R. LASHUM AND J. DOE, APPELLEES.

Filed June 3, 2025.    No. A-24-526.

Appeal from the District Court for Dakota County: BRYAN C. MEISMER, Judge. Appeal dismissed.

Kurt A. Hohenstein, pro se.

Andrew T. Schlosser and Susan J. Spahn, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.O., attorneys for appellee Cottonwood Flats, Inc.

RIEDMANN, Chief Judge, and MOORE and ARTERBURN, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Kurt A. Hohenstein, representing himself, appeals from a writ of restitution entered by the district court for Dakota County. Kurt challenges the district court's subject matter jurisdiction in several respects and asserts that the doctrine of claim preclusion bars relitigation of the ownership of the property at issue in this case. Because we ultimately find that the case is moot, we dismiss the appeal.

## II. BACKGROUND

Although the present action began in December 2023, this case is the most recent development in an ongoing dispute amongst family members concerning ownership interests in and operation of the family farm incorporated as Cottonwood Flats, Inc. We need not set forth all

- 1 -

the facts and procedural history of the underlying litigation to consider the issues raised in this appeal. We summarize the background only to the extent necessary to provide context for this case. A more detailed case history can be found in *Hohenstein v. Hohenstein*, No. A-22-108, 2023 WL 5217713 (Neb. App. Aug. 15, 2023) (selected for posting to court website) (*Hohenstein I*). See, also, *Hohenstein v. Hohenstein*, No. A-22-278, 2023 WL 5919731 (Neb. App. Sept. 12, 2023) (*Hohenstein II*); *Hohenstein v. Hohenstein*, No. A-23-1057, 2024 WL 4601638 (Neb. App. Oct. 29, 2024) (*Hohenstein III*).

1. QUITCLAIM DEED

On November 2, 2010, Lillian Hohenstein, Kurt's mother, executed a quitclaim deed transferring her home (referred to hereafter as "the family home") from the William and Lillian Hohenstein Trust (referred to hereafter as "Lillian's Trust") to Cottonwood Flats. Although the quitclaim deed states that the transfer was executed "[f]or valuable consideration," it appears that Lillian's Trust did not receive any compensation for the sale. After the transfer, Lillian continued to live in the family home until her death in December 2015.

2. UNDERLYING LITIGATION

In 2013, three of Kurt's siblings filed suit against Kurt and Lillian. *Hohenstein I*. The three siblings were shareholders in Cottonwood Flats, as was Kurt. *Id*. In 2014, the siblings filed an amended complaint both individually and derivatively on behalf of Cottonwood Flats.

The siblings sued Kurt individually and as director and officer of Cottonwood Flats. The siblings sued Lillian individually, as trustee of her trust, as trustee of the Hohenstein Family Trust, and as director and officer of Cottonwood Flats. Lillian died before trial, and the case was revived against Kurt as special administrator of her estate. *Id*. Two of the plaintiff siblings died before entry of the final order entered after trial; the case was revived in the names of their surviving spouses as personal representatives. *Id*.

In their amended complaint, the plaintiffs generally alleged that Kurt engaged in self-dealing transactions and unduly influenced Lillian in those transactions, resulting in Kurt's improper enrichment and financial harm to Cottonwood Flats. A significant portion of the plaintiffs' claims concerned stock purchase agreements wherein Kurt allegedly received stock for less than fair market value. Relevant to this appeal is one transaction referred to as the "2010 Transaction" or the "November 2, 2010 Transaction" wherein Lillian, on behalf of Cottonwood Flats, transferred stock to Kurt, resulting in him receiving a majority of the corporation's stock.

With regard to the transfer of the family home, the amended complaint alleged:

> On or about November 2, 2010, [Lillian] transferred real property, including the home in which she resides, from [Lillian's Trust] to the Corporation for less than fair value (the "Home Transfer"). . . . [Lillian] breached her fiduciary duty as Trustee by executing and/or authorizing . . . the Home Transfer, for less than fair value. . . . The . . . Home Transfer [is] invalid and unenforceable because [it] constituted directors' conflicting interest transaction and [was] not fair to the Corporation nor authorized and/or executed by the proper number of disinterested directors as required by Neb. Rev. Stat. § 21-20,113 and 21-20,1114.

In their request for relief, the plaintiffs asked the court to deem the home transfer invalid and unenforceable.

Trial was held in April 2017. The district court determined that Kurt was not a credible witness and generally found in favor of the plaintiffs. *Hohenstein I*. For reasons unknown to us, the court's final order following trial was not entered until 2019. Nevertheless, in the 2019 final order, the court found that Kurt and Lillian had breached their fiduciary duties in multiple ways, engaged in a pattern of self-dealing with respect to Cottonwood Flats, and that Kurt exerted undue influence over Lillian. The court specifically found that "the November 2, 2010 Transaction (and all of the related documents) was the result of . . . undue influence."

The court ordered that Kurt's self-dealing transactions involving stock shares of Cottonwood Flats be reversed and restored to the proper parties. All agreements and documents executed by Kurt or Lillian on behalf of Cottonwood Flats that were inconsistent with the court's ordered relief were declared null and void. Kurt was ordered to hire a forensic accountant to examine the books and records of Cottonwood Flats and provide a full and complete accounting of the corporation's assets, liabilities, receipts, and expenditures from January 1, 2002, to the present. The court stated that after the accounting was completed and submitted to the court, the court would conduct additional proceedings to award monetary judgment against the defendants.

A few months after the 2019 final order was entered, the plaintiffs motioned to alter or amend the judgment, which the district court granted. The amendment adjusted certain stock transfers not at issue in this appeal. In 2022, after the forensic accounting was completed, the court entered another final order concerning monetary judgment against Kurt and in favor of Cottonwood Flats.

Kurt filed subsequent appeals in 2019, 2020, 2022, and 2023. *Hohenstein I*; *Hohenstein III*. In the 2022 appeal, one of Kurt's assigned errors alleged that the district court erred in deciding the action because Cottonwood Flats was an indispensable party to the proceedings. *Hohenstein I*. We rejected his argument and found that the plaintiffs exercised their rights as shareholders to sue on behalf of Cottonwood Flats and brought suit in their representative capacity for the corporation. See *id*.

In the 2023 appeal, Kurt similarly argued that because Cottonwood Flats was never made a party to the case, the court did not have jurisdiction to grant the plaintiffs judgment for attorney fees. *Hohenstein III*. We noted that Kurt's argument was an effort to relitigate the issue of whether Cottonwood Flats should have been included as a party in the litigation and that the question was resolved in the prior appeal. See *id*.

### 3. ADDITIONAL TRANSACTIONS CONCERNING FAMILY HOME

In March 2016, Cottonwood Flats and Kurt entered into a lease agreement for the family home. Kurt was still a director and officer of Cottonwood Flats at this time. *Hohenstein I*. Under the terms of the lease, Cottonwood Flats agreed to pay for electricity, propane, maintenance of the landline, maintenance of the well, and garbage pickup. Kurt agreed to make repairs and improvements to the residence as needed, but was not required to pay rent under the agreement. The lease was scheduled to end on December 31, 2016, but could be extended by mutual agreement of the parties.

Although the original lease expired in December 2016, the record indicates that Kurt continued to reside at the family home well into 2024. On June 1, 2020, a sublease agreement was entered into by Kurt as lessor and Kasey R. LaShum as lessee. The agreement indicates that Kasey was employed by Kurt and leased a room from him in the family home. The sublease continued on a month-to-month basis.

On June 30, 2023, an extension of the original lease agreement between Kurt and Cottonwood Flats was executed. The extension began on January 1, 2024, and ended on December 31, 2024. It appears that Kurt signed on behalf of Cottonwood Flats in his capacity as director of the corporation.

In response, the plaintiffs sought a temporary injunction to enjoin Kurt from taking any further action as director or otherwise on behalf of Cottonwood Flats. In this new lawsuit, the plaintiffs named both Kurt and Cottonwood Flats as defendants. In November 2023, the district court issued the requested temporary injunction, stating in its order that maintaining Kurt in his position as director would subject the plaintiffs to "ongoing gross abuse . . . for [Kurt's] personal benefit." The court appointed Farmers National Company (Farmers National) to serve as the temporary custodian of Cottonwood Flats.

### 4. PRESENT CASE

Following the temporary injunction, Kurt and Kasey continued to live in the family home. On December 1, 2023, Farmers National issued a 3-day notice to vacate to Kurt and Kasey pursuant to Neb. Rev. Stat. § 25-21,221 (Reissue 2016). The Dakota County Sheriff's Office served Kurt and Kasey with the notice on December 5 by posting the notice at the family home.

On December 13, 2023, Cottonwood Flats filed the present action for forcible entry and detainer. Cottonwood Flats specifically sought a writ of restitution requiring Kurt and Kasey to be removed from the family home. The corporation asserted that neither Kurt nor Kasey had a valid lease and that neither individual had permission or authority to occupy the home.

On January 3, 2024, Kurt, representing himself, filed a motion to dismiss for failure to state a cause of action and for lack of personal jurisdiction. Kurt also filed an answer wherein he asserted jurisdictional issues, the doctrine of claim preclusion, the doctrine of estoppel, and his lawful right to occupy the premises via his lease and lease extension. Kurt further filed a counterclaim against Cottonwood Flats alleging breach of contract. Kasey filed a voluntary appearance in the case.

Trial was held on February 1, 2024. Kasey did not appear. The court received several exhibits, including the 2010 quitclaim deed, a copy of the notice to vacate along with an affidavit of service, the 2016 lease agreement, the 2023 extension of the lease agreement, the sublease agreement, Kurt's affidavit, the plaintiffs' amended complaint from the underlying proceedings, the district court's final orders from the underlying proceedings (including the 2019 final order following trial, the 2019 order granting plaintiffs' motion to alter or amend, and the 2022 final order following the accountant's examination), and a copy of the plaintiffs' appellee brief from the underlying litigation.

Kurt was the only witness to testify at trial. Kurt testified that he was currently residing at the family home with Kasey. Kurt admitted that in the underlying litigation, he did not contest that Cottonwood Flats owned the family home. However, he testified that his position changed after

the district court issued its final orders. Based on his interpretation of those orders, Kurt believed that the 2010 quitclaim deed was null and void and that Lillian's Trust owned the family home.

Nevertheless, Kurt admitted that the 2010 quitclaim deed was the most recent deed concerning the family home. He was not aware of any other deeds concerning the home. Kurt also admitted that Cottonwood Flats had paid property taxes and utility fees for the family home every year since 2010.

Kurt stated that he received the 3-day notice to vacate "[s]ometime in December." He recalled that the notice was placed in the door and that the complaint was posted on the house. Kurt admitted that despite living in the family home for years, he had never paid rent to Cottonwood Flats.

In lieu of attempting to cross-examine himself, Kurt offered his own affidavit. In his affidavit, Kurt averred that since its incorporation, Cottonwood Flats had a policy of providing housing for its principal operator or managers at no cost to them. He stated that his parents originally lived in the family home, and that upon his father's death, Lillian continued to live there until her death in 2015. Kurt averred that in March 2016, he became manager of the farm, executed a lease with Cottonwood Flats, and moved into the family home. He affirmed that the lease was most recently extended on June 30, 2023.

The court then received arguments from the parties. Kurt reiterated his argument that the district court's final orders invalidated the 2010 quitclaim deed and restored the property back to Lillian's Trust. Kurt alternatively argued that if Cottonwood Flats did own the family home, he had an enforceable lease to the property.

Cottonwood Flats did not read the district court's final orders to invalidate the 2010 quitclaim deed as Kurt did. Cottonwood Flats asserted that there was nothing in any of the final orders to indicate that the deed had been declared null and void. The corporation asserted that all the evidence, including the quitclaim deed, the 2016 lease agreement, and the 2023 extension of the lease agreement, indicated that Cottonwood Flats was the rightful owner of the family home.

Cottonwood Flats simultaneously argued that the 2016 lease agreement was executed as a part of Kurt's employment with Cottonwood Flats and was thus invalidated by the district court in the underlying litigation. Accordingly, Cottonwood Flats argued that Kurt did not have a valid lease and that Kurt had no authority to reside in the home or sublease a room to Kasey. Since Kurt had received the notice to vacate and failed to do so, Cottonwood Flats concluded that it was entitled to a writ of restitution.

Cottonwood Flats admitted that in the underlying proceedings, the plaintiffs' initial position was that the transfer of the family home was executed in violation of several fiduciary duties and with undue influence by Kurt. In short, the plaintiffs sought to invalidate the quitclaim deed because they believed Lillian had improperly transferred the family home out of her deceased husband's trust. The plaintiffs later determined that Lillian had transferred the property out of her own revocable trust, which she could operate as she deemed fit. Thereafter, the plaintiffs continued to argue that the transfer was evidence of Kurt's undue influence over Lillian, but they no longer believed that the transfer was a breach of fiduciary duties.

On March 18, 2024, the district court entered an order granting restitution to Cottonwood Flats. The court reviewed the final orders from the underlying proceedings and determined that they did not alter or address the ownership of the family home. The court found that there was no

evidence that anyone other than Cottonwood Flats was the owner of the home. The court further found that Cottonwood Flats complied with its statutory obligations to serve Kurt and Kasey with a 3-day notice to vacate. Accordingly, the court determined that Cottonwood Flats was the owner of the family home and was entitled to possession and immediate restitution. Although it is not stated outright in the order, it appears that the district court implicitly determined that Kurt's lease and lease extension were invalidated in the underlying litigation. Kurt's counterclaim for breach of contract was denied.

On March 19, 2024, the district court clerk issued a writ of restitution to remove Kurt and Kasey from the family home. A second writ of restitution was issued on March 26, 2024, to correct the street address of the family home.

On March 21, 2024, Kurt filed a motion to alter or amend the district court's order. On March 27, 2024, Kurt also filed a motion for an ex parte order to quash the writ of restitution for lack of jurisdiction. In these motions, Kurt raised the same arguments he made at trial. On March 28, 2024, Kurt filed a notice of appeal. Kurt withdrew his motions in the district court to proceed with his appeal. The record indicates that Kurt also sought a supersedeas bond to stay the writ pending his appeal, but that motion is not in our record.

On March 29, 2024, Cottonwood Flats filed a motion requesting that the district court approve a bond in the amount of $12,500 for the corporation to enforce the judgment of restitution notwithstanding the execution of a supersedeas bond by Kurt. Cottonwood Flats argued that it was in its best interests to remove Kurt from the property pending the appeal. The corporation wanted to insulate the property from any further improper acts performed by Kurt or those he permitted to reside on the property. Our record does not include a ruling on this motion or a ruling on Kurt's motion for a supersedeas bond.

This court determined that Kurt's appeal was prematurely filed because there was no ruling on his motion to alter or amend. We stated that a timely filed motion to alter or amend judgment, even if withdrawn, requires a ruling by the district court. To that end, Kurt requested that the district court rule on his withdrawn motion to alter or amend. The court subsequently overruled Kurt's motion to alter or amend. Kurt now appeals.

### III. ASSIGNMENTS OF ERROR

Kurt's brief on appeal contains five assigned errors. In his first two assigned errors, he alleges that the district court lacked subject matter jurisdiction due to (1) a failure to serve Cottonwood Flats in the underlying litigation and (2) a title dispute regarding the family home. In his remaining assigned errors, which we have reordered, Kurt alleges that the district court erred in (3) ignoring admissions that Cottonwood Flats was not the owner of the property and disregarding the district court's findings that the 2010 quitclaim deed was void and unenforceable, (4) ignoring the lease between Cottonwood Flats and Kurt, and (5) failing to find that the doctrine of claim preclusion precluded issues concerning ownership and use of the family home.

### IV. STANDARD OF REVIEW

Subject matter jurisdiction is a question of law. *Joshua M. v. State*, 316 Neb. 446, 5 N.W.3d 454 (2024). When a jurisdictional question does not involve a factual dispute, the issue is a matter

of law. *Id.* An appellate court reviews questions of law independently of the lower court's conclusion. *Id.*

Mootness does not prevent appellate jurisdiction, but because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, Nebraska appellate courts have reviewed mootness determinations under the same standard of review as other jurisdictional questions. *Weatherly v. Cochran*, 301 Neb. 426, 918 N.W.2d 868 (2018).

V. ANALYSIS

1. SUBJECT MATTER JURISDICTION

Kurt's first two assignments of error allege that the district court lacked subject matter jurisdiction to decide this case. Questions regarding a court's subject matter jurisdiction should be resolved as a threshold matter before an examination of the merits. *Joshua M. v. State, supra*. Accordingly, we begin our analysis by addressing these arguments.

(a) Failure to Serve Cottonwood Flats in Underlying Litigation

Kurt assigns that the district court lacked subject matter jurisdiction because Cottonwood Flats was not served with process in the underlying litigation, and thus, the district court did not have the authority to appoint a temporary custodian for the corporation, nor did the temporary custodian, Farmers National, have the authority to serve Kurt with a notice to vacate. Kurt's assignment of error could be read as an attack on the original 2013 litigation or on the 2023 litigation wherein the plaintiffs sought a temporary injunction. A generalized and vague assignment of error that does not advise an appellate court of the issue submitted for decision will not be considered except to the extent that it is narrowed by the specific arguments asserted in the appellant's brief. *Finley-Swanson v. Swanson*, 20 Neb. App. 316, 823 N.W.2d 697 (2012). After reviewing Kurt's brief, we read his assignment of error as an attack on the service in the 2023 litigation. However, because he discusses the lack of service in the 2013 litigation as well, we address both arguments.

Reading Kurt's assignment of error as an attack on the service in the 2023 litigation, we conclude that the record is insufficient to support Kurt's argument. In his appellate brief, Kurt does not cite to any evidence in the record which shows that Cottonwood Flats was not served in that case. It appears that the only consequential document in our record from that case is the court's order granting a temporary injunction. The order does not discuss how or whether Cottonwood Flats was served. It is incumbent upon an appellant to supply a record which supports his or her appeal. *State v. Santos-Romero*, 31 Neb. App. 14, 974 N.W.2d 624 (2022). We decline to scour the record in search of facts that might support Kurt's claim. See, e.g., *Clemens v. Emme*, 316 Neb. 777, 7 N.W.3d 166 (2024).

To the extent that Kurt also attacks the service made to Cottonwood Flats in the 2013 litigation, we find that this argument is his latest attempt to relitigate the issue of whether Cottonwood Flats was an indispensable party to the original proceedings. We unequivocally held in *Hohenstein I* that the plaintiffs were not required to name Cottonwood Flats as a party to that case. A year later, when Kurt raised the issue again in one of his subsequent appeals, we emphasized that the matter had already been resolved. See *Hohenstein III*.

Issue preclusion bars the relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate. *Hara v. Reichert*, 287 Neb. 577, 843 N.W.2d 812 (2014). Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Id.* Issue preclusion applies only to issues actually litigated. *Id.* Issue preclusion protects litigants from relitigating an identical issue with a party or his or her privy and promotes judicial economy by preventing needless litigation. *Id.*

Here, all the elements of issue preclusion are met. Our prior opinions make clear that Cottonwood Flats was not an indispensable party in the 2013 litigation, and that action resulted in a final judgment on the merits. Cottonwood Flats was in privity with the plaintiffs in the 2013 case, and there was an opportunity to fully and fairly litigate the issue in that prior action. Because Kurt presents no other evidence for his assertion that Farmers National was improperly appointed as temporary custodian, this argument fails.

(b) Title Dispute

Kurt also assigns and argues that the district court lacked subject matter jurisdiction because this case presents a title dispute over the family home. Cottonwood Flats disagrees and argues that Kurt failed to produce any evidence showing that the title to the home was legitimately in dispute.

We begin with a review of our forcible entry and detainer jurisprudence. Forcible entry and detainer actions are special statutory proceedings designed to provide a speedy and summary method by which the owner of real estate might regain possession of it from one who had unlawfully and forcibly entered into and detained possession thereof, or one who, having lawfully entered, then unlawfully and forcibly detained possession. See *Woodsonia Hwy 281 v. American Multi-Cinema*, 318 Neb. 592, 17 N.W.3d 780 (2025). Given the limited scope of forcible entry and detainer, when a court hears such an action, it sits as a special statutory tribunal to summarily decide the limited issues authorized by statute and does not have the power to hear and determine other issues. *Id.* Further, the Nebraska Supreme Court has held for well over a century that a court cannot determine a question of title in a forcible entry and detainer action; if the resolution of the case would require the court to determine a title dispute, it must dismiss the case for lack of jurisdiction. See, *Cummins Mgmt. v. Gilroy*, 266 Neb. 635, 667 N.W.2d 538 (2003); *Woodsonia Hwy 281 v. American Multi-Cinema, supra*.

When a forcible entry and detainer action is ongoing, the mere averment that title is in dispute does not automatically divest the court of jurisdiction. See *Federal Nat. Mortgage Assn. v. Marcuzzo*, 289 Neb. 301, 854 N.W.2d 774 (2014). Instead, the court may proceed until the evidence discloses that the question involved is one of title. *Id.* A court cannot determine that title is in dispute based solely on the pleadings, claims, or pretensions of the parties. *Id.*

Kurt points to the underlying proceedings as evidence of a title dispute. He argues that in the original 2013 litigation, the plaintiffs made admissions in their pleadings that the 2010 quitclaim deed was void. Kurt seemingly relies on the plaintiffs' amended complaint from the underlying proceedings wherein the plaintiffs alleged that the home transfer was invalid and

unenforceable. Kurt also contends that the district court agreed with the plaintiffs, determined that the property transfer was the result of undue influence, and voided the quitclaim deed in its 2019 final order following trial. In support of his argument, he cites to the following portion of the order: "the November 2, 2010 Transaction (and all of the related documents) was the result of . . . undue influence." Kurt contends that the quitclaim deed was included in the phrase "all of the related documents."

Cottonwood Flats disagrees and argues that the district court's final order did not address ownership rights to the family home. In oral argument, Cottonwood Flats agreed that the quitclaim deed was one of the "related documents" the court deemed was the result of undue influence in its order. However, the corporation argues that the court's ordered relief does not speak to or in any way invalidate the home transfer. In its order granting restitution, the district court agreed with Cottonwood Flats' interpretation of the underlying litigation. In its order, the district court stated that the 2019 final order following trial "did not address the property in question here, and there is no evidence that anyone other than [Cottonwood Flats] is the owner of the property."

After reviewing the final orders provided to us from the underlying proceedings, including the 2019 final order following trial, the order granting the plaintiffs' motion to alter or amend, and the 2022 final order issued after the accounting evaluation, we conclude that the district court in the underlying proceedings did not invalidate the 2010 quitclaim deed. While it is true that the district court discussed the home transfer throughout its 2019 final order, there is nothing in the order to indicate that the court voided the quitclaim deed.

It is not clear to us whether the home transfer was identified as one of the "related documents," and consequently, whether the district court determined that the transfer was the result of undue influence. There is other language in the final order that could be read to suggest the court avoided such a finding. But because both Kurt and Cottonwood Flats read the order to find that the transfer was the result of undue influence, we focus our analysis accordingly.

Even if the district court did determine that the quitclaim deed was a "related document" that was the product of undue influence, the relief ordered by the court does not invalidate the transfer. In the relief granted section of the order, the court does not mention the family home, the home transfer, or the 2010 quitclaim deed. Instead, the court invalidates Kurt's self-dealing stock transactions. While the court also voided all agreements executed by Kurt or Lillian on behalf of Cottonwood Flats that were inconsistent with the other relief orders, this language does not reach the quitclaim deed because the deed was executed by Lillian on behalf of her trust. There is simply nothing in this order or any of the other final orders to suggest that (1) the quitclaim deed was invalidated or (2) Cottonwood Flats is not the owner of the family home.

Kurt's reliance on the plaintiffs' "admissions" made in the underlying proceedings is erroneous. A judicial admission, as a formal act done in the course of judicial proceedings, is a substitute for evidence and thereby waives and dispenses with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by an opponent is true. *Clemens v. Emme*, 316 Neb. 777, 7 N.W.3d 166 (2024). Judicial admissions must be deliberate, clear, and unequivocal, and they do not extend beyond the intent of the admission as disclosed by its context. *Id.* Where a party testifies clearly and unequivocally to a fact within his or her own knowledge, such testimony may be considered as a judicial admission. *Id.*

The statements made in the plaintiffs' pleadings concerning the family home do not amount to judicial admissions. The statements were not substitutes for evidence, but rather a reflection of the plaintiffs' initial theory of the case with regard to the property transfer. As Cottonwood Flats explained at the hearing on its motion for restitution, the plaintiffs originally sought to invalidate the quitclaim deed because they believed Lillian did not have the authority to transfer the property. But the plaintiffs later determined that Lillian transferred the property from her own trust, which she had the right to do. While the plaintiffs continued to argue that the transfer was evidence of Kurt's undue influence over Lillian, they no longer believed that the transfer was a breach of fiduciary duties. Kurt's attempt to posture this abandoned case theory as a judicial admission is without merit.

In our record, the only evidence presented concerning the ownership of the family home was the 2010 quitclaim deed wherein Lillian, as trustee of her trust, deeded the property to Cottonwood Flats. Thus, the evidence did not show that this action concerned a question of title, and the district court had jurisdiction to issue the writ of restitution. This assignment of error lacks merit. For the same reasons, we also hold that Kurt's third assigned error that the district court ignored admissions that Cottonwood Flats was not the property owner and disregarded the district court's findings that the 2010 quitclaim deed was void and unenforceable is not supported by the record.

## 2. LEASE BETWEEN COTTONWOOD FLATS AND KURT

Kurt asserts that the district court erred in ignoring the lease between himself and Cottonwood Flats. Cottonwood Flats counters that the district court's 2019 final order following trial in the underlying proceedings invalidated Kurt's lease and lease extension. Alternatively, Cottonwood Flats asserts that even if Kurt's lease and lease extension were valid and binding, his appeal is now moot because the lease extension expired on December 31, 2024. We begin our analysis by addressing the issue of mootness, because if the appeal is indeed moot, an analysis of any remaining assigned errors and issues would be superfluous.

Mootness does not prevent appellate jurisdiction, but because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, Nebraska appellate courts have reviewed mootness determinations under the same standard of review as other jurisdictional questions. *Weatherly v. Cochran*, 301 Neb. 426, 918 N.W.2d 868 (2018). When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by the lower courts. *Id.* As a general rule, a moot case is subject to summary dismissal. *Applied Underwriters v. S.E.B. Servs. of New York*, 297 Neb. 246, 898 N.W.2d 366 (2017).

A case is moot if the facts underlying the dispute have changed, such that the issues presented are no longer alive. *NP Dodge Mgmt. Co. v. Holcomb*, 314 Neb. 748, 993 N.W.2d 105 (2023). The central question in a mootness analysis is whether changes in circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief. *Id.* Stated differently, a moot case exists where a judgment rendered by the court will have no practical legal effect upon an existing controversy because an intervening event renders any grant of effectual relief impossible for the reviewing court. *Id.*

In *NP Dodge Mgmt. Co. v. Holcomb, supra*, the Supreme Court held that an appeal from a writ of restitution under the Uniform Residential Landlord and Tenant Act was moot when the writ of restitution was executed, and the tenant was removed prior to the completion of the appellate process. Further, the lease had expired by the time the Supreme Court issued its opinion. In reaching its decision, the court favorably cited *Marshall v. Housing Auth. of City of San Antonio*, 198 S.W.3d 782 (Tex. 2006), which held that the issue of possession in an appeal from a forcible entry and detainer judgment is moot when a tenant's lease has expired, and the tenant presents no basis for claiming right to possession after that date. Because the tenant in *NP Dodge Mgmt. Co. v. Holcomb, supra*, offered no reason for why she would be entitled to possession of the apartment after the term of her lease, the court determined that it could not grant relief that would have any practical legal effect.

The case before us is similar. When this case was presented to the district court, Kurt's lease extension had not yet expired. However, during the pendency of Kurt's appeal, the extension period passed. Kurt has failed to identify any evidence beyond the expired lease which suggests that he is entitled to current and immediate possession of the property. A judgment based on Kurt's expired lease would have no practical effect. At this time, Cottonwood Flats is the only party with a right to immediate possession.

The record is silent as to whether Kurt has continued to live in the family home. Kurt requested a supersedeas bond pending the appeal, but Cottonwood Flats opposed his motion and sought enforcement of restitution. There is no district court order in our record addressing either motion. Nevertheless, Kurt admitted during oral argument that he was no longer living in the home. Thus, he was either removed or voluntarily left the home prior to the completion of the appellate process, and the issue is now moot.

Kurt was put on notice of the issue of mootness when Cottonwood Flats raised the issue in its brief. Kurt had the opportunity to refute this argument in a reply brief. Kurt did, in fact, file a reply brief, but a careful review of this brief reveals that Kurt wholly ignored the mootness issue. Instead, he reiterated the main points found in his original brief.

Having been given notice of this issue, Kurt had the burden to refute Cottonwood Flats' argument and demonstrate why the appeal was not moot. He failed to do so. Accordingly, we find that the issue of possession, and consequently, the appeal, is now moot. We need not address Kurt's final assignment of error concerning claim preclusion.

## VI. CONCLUSION

For the foregoing reasons, we find that the case is moot, and we dismiss the appeal.

APPEAL DISMISSED.